FIRE et al., Appellants,

v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, Appellee.

[Cite as *Fire v. Ohio Dept. of Job & Family Servs.*,
163 Ohio App.3d 392, 2005-Ohio-5214.]

Court of Appeals of Ohio,
Fifth District, Stark County.

Nos. 2004CA00374, 2005CA00038 and 2005CA00039.

Decided Sept. 19, 2005.

Victoria E. Schafer, for appellants.

Jim Petro, Attorney General, and Ara Mekhjian, Assistant Attorney General, for appellee.

BOGGINS, Presiding Judge.

{¶ 1} Appellants, Hilda Fire, Beryl Loudin, and Martha Eckelberry, separately appeal the decisions issued by the Stark County Court of Common Pleas in each of their respective cases.

{¶ 2} Appellee is the Ohio Department of Job and Family Services ("ODJFS").

{¶ 3} This opinion will address the single issue being raised in each appeal, rather than in separate opinions as, while the appellants and the monetary aspects differ, the legal conclusion reached herein shall resolve all three appeals.

## STATEMENT OF THE FACTS AND CASE

{¶ 4} In each of these three cases, the appellants were either in nursing homes or were planning to enter such a facility based on health- and age-related reasons. Each appellant, either individually or through an attorney, had in fact, effectively divested herself of assets by placing such assets' in annuities with balloon payments after a period of comparatively small monthly payments. The balloon payment on each such annuity purchased would be distributed to a named next of kin. Each appellant, after the purchase of the annuity, applied for Medicaid benefits to provide for payment for their residency in a nursing home.

{¶ 5} Appellant Hilda Fire was 89 years old when she entered the nursing home on December 18, 2003. On March 15, 2004, she purchased an annuity in the amount of $182,255, which will pay her $126 per month for six years with a balloon payment on February 15, 2010. Fire's son is the named beneficiary on the annuity. On March 17, 2004, two days after the purchase of the annuity, Fire applied for Medicaid benefits. Her application for Medicaid benefits was denied because it was initially determined that the purchase of the annuity caused her to have resources in excess of the $1,500 resource limit. Fire then requested and received a state hearing to challenge that determination. In her case, the state hearing officer concluded that the purchase of the annuity did not cause her to have excess resources but instead constituted an improper transfer for Medicaid purposes. The hearing officer then concluded that Fire should have been determined to be eligible for Medicaid benefits, but that a temporary period of "restricted coverage"[1] needed to be imposed to account for the improper transfer.

{¶ 6} Appellant Beryl Loudin entered a nursing home at the age of 85 on April 14, 2004. On May 20, 2004, she applied for Medicaid benefits. On May 24, 2004, she purchased an annuity in the amount of $30,523.80 with four named beneficiaries. The annuity will pay her $21.42 per month for six years with a balloon payment of $29,755.22. Upon reviewing Loudin's application for Medicaid benefits, the county determined that she had more than $1,500 in resources, and

---

1. Restricted coverage means that the applicant is eligible for certain covered Medicaid services, such as office visits, medications and durable medical equipment, but is ineligible for nursing home vendor payments. The period for the restricted coverage is determined by dividing the amount of the improper transfer by the current average monthly private pay rate for a long-term care facility. See Ohio Adm.Code 5101:1–39–07(H) and (I).

because she had made an improper transfer as a result of purchasing the annuity, a restricted coverage period of six months was imposed. Loudin appealed that decision and the state hearing officer determined that she did not have more than $1,500 in resources, but agreed that she had made an improper transfer of $29,755.22, necessitating a period of restricted coverage.

{¶ 7} Appellant Martha Eckelberry entered a nursing home in October 2003, at the age of 80. On April 29, 2004, Eckelberry's son Mark, using his power of attorney for his mother, purchased an annuity in the amount of $104,375, which will pay her $36.06 per month through 2013, with a balloon payment of $103,321.06. Mark Eckelberry is the named beneficiary on the annuity. On May 4, 2004, four days after the purchase of the annuity, appellant Eckelberry applied for Medicaid benefits. Her application was approved with a 22–month period of restricted coverage imposed, based on her purchase of the annuity. Eckelberry requested and received a state hearing to challenge that determination. In her case, the state hearing officer also concluded that the purchase of the annuity constituted an improper transfer of $103,321.06 for Medicaid purposes. The hearing officer then found that Eckelberry had not proven by clear and convincing evidence that she was expected to live past the date of the balloon payment, as required by Ohio Adm.Code 5101:1–39–22.8(E).

{¶ 8} Appellants then requested an administrative appeal by the Director of ODJFS, who, in turn, affirmed the state hearing officer decisions. Appellants then filed administrative appeals with the Stark County Court of Common Pleas pursuant to R.C. 5101.35(E) and 119.12.

{¶ 9} The Stark County Court of Common Pleas, in each of the subject cases, affirmed the administrative appeal decisions.

{¶ 10} Appellants now appeal, assigning the following identical errors:

### ASSIGNMENTS OF ERROR

{¶ 11} "I. Appellants have been denied Medicaid benefits due to appellee's improper interpretation of the law.

{¶ 12} "II. Appellee's improper interpretation of Ohio law denies appellant's right to equal protection.

{¶ 13} "III. Appellee's improper interpretation of Ohio law creates an unreasonable and impossible burden on appellant and improperly narrows the intent and scope of OAC § 5101:1–39.22.8(E)."

### I, III

{¶ 14} In each of these assignments of error, appellants argue that appellee improperly interpreted Ohio law as it applies to their Medicaid eligibility. We disagree.

{¶ 15} An appeal from an administrative decision of the Director of ODJFS may be taken in the court of common pleas pursuant to R.C. 119.12.

{¶ 16} The standard of review that the trial court must employ in an appeal from an administrative agency is governed by R.C. 119.12, which states:

{¶ 17} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 18} The evidence required by R.C. 119.12 has been defined as follows: (1) "reliable" evidence, i.e., evidence that can be confidently trusted. In order to be reliable, there must be a reasonable probability that the fact sought to be proved by evidence is true, (2) "probative" evidence, i.e., evidence that tends to prove the issue in question and that is relevant in determining the issue, and (3) "substantial" evidence, i.e., evidence with some weight, importance, and value. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 19} "The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. On an appeal pursuant to R.C. 119.12, an appellate court shall review evidentiary issues to determine whether the common pleas court abused its discretion in determining whether the agency decision was supported by reliable, probative, and substantial evidence. Id. Issues of law, however, are reviewed de novo. *Sohi v. Ohio State Dental Bd.* (1998), 130 Ohio App.3d 414, 421, 720 N.E.2d 187.

{¶ 20} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably.

{¶ 21} With this standard of review in mind, we must determine whether the trial court abused its discretion when it concluded that the transfers to appellants' relatives under the respective private annuity agreements constituted transfers for less than fair market value and therefore supported the period of restricted Medicaid eligibility.

{¶ 22} The Medicaid program was established in 1965 under Title XIX of the Social Security Act, codified at Section 1396 et seq., Title 42, U.S.Code. The purpose of the program is to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae* (1980), 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784; see, also, *Wisconsin Dept. of Health & Family Servs. v. Blumer* (2002), 534 U.S. 473, 122 S.Ct. 962, 966, 151 L.Ed.2d 935. It is a "cooperative federal-state program" that is jointly financed with federal and state funds for those states that choose to participate. *Wilder v. Virginia Hosp. Assn.* (1990), 496 U.S. 498, 501, 110 S.Ct. 2510, 110 L.Ed.2d 455. A participating state is required to develop reasonable standards for determining eligibility consistent with the Act. Section 1396(a)(17), Title 42, U.S.Code. Ohio is a participating state, and its eligibility requirements are codified at R.C. 5111.01 et seq. See, also, former Ohio Adm.Code 5101:1–39.

{¶ 23} To be eligible for Medicaid in Ohio, an applicant's countable resources cannot exceed $1,500. Ohio Adm.Code 5101:1–39–05(A)(8). A resource is defined as "cash and any other personal property, as well as any real property, that an individual * * * owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Ohio Adm.Code 5101:1–39–05(A)(1). The agency is required to review any transfer of an applicant's resources in order to determine if any transfer is improper. Ohio Adm.Code 5101:1–39–07(A).

{¶ 24} If the agency determines that a transfer was improper, the applicant is eligible for a period of restricted Medicaid coverage, which, as is pertinent to these cases, is the period of time that an individual is ineligible for long-term care facility vendor payments. Ohio Adm.Code 5101:1–39–07(A).

{¶ 25} Here, the agency determined that the purchases of the annuities by appellants were improper.

{¶ 26} Ohio Adm.Code 5101:1–39–22.8(A) defines an annuity as "a right to receive fixed, periodic payments, either for life or a term of years." An annuity is typically purchased from a bank or insurance company as part of a retirement plan. Indeed, the rules contained in the Ohio Administrative Code anticipate as much. See Ohio Adm.Code 5101:1–39–22.7 and 5101:1–39–22.8(B).

{¶ 27} Ohio Adm.Code 5101:1–39–22.8 also provides:

{¶ 28} "(C) Annuities, although usually purchased in order to provide a source of income for retirement, are occasionally used to shelter assets. In order to avoid penalizing annuities validly purchased as part of a retirement plan, a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value). If the expected return on the annuity is commensurate

with a reasonable estimate of the life expectancy of the beneficiary, the annuity can be deemed to be actuarially sound.

{¶ 29} " * * *

{¶ 30} "(E) If an annuity contains a balloon payment provision, the life tables in this rule may not be used. The value of the balloon payment will be deemed improperly transferred unless rebutted by the applicant/recipient. To rebut the presumption, the applicant must produce clear and convincing medical evidence that the annuitant is expected to actually live past the date of the balloon payment."

{¶ 31} Appellants claim that the payout to them coincides with their respective life expectancies, and therefore the annuities at issue are actuarially sound. Appellants offered letters from one Dr. Jeff B. Romig in support of their claims that each will live beyond the balloon payment date.

{¶ 32} The letters by Dr. Romig were identical in each of these three cases, stating:

{¶ 33} "Re: (Ms. Hilda Fire) (Ms. Beryl Loudin) (Ms. Martha E. Eckelberry)

{¶ 34} "To whom it may concern:

{¶ 35} "This letter is in regards to an expert medical evaluation of the above named patent. I was contracted by the patient's Power of Attorney to perform a physical exam and to review the patient's medical records. This included a physical exam of the patient, evaluation of laboratory data, a detailed review of the patient's past medical history, and review of current medications.

{¶ 36} "After an extensive and through [sic] evaluation of this patient, it is my expert medical opinion that this patient could live for (6)(7)(9.5) years.

{¶ 37} "If you require further information, please feel free to contact my office."

{¶ 38} The hearing officer and the trial court found that these letters did not meet the required clear-and-convincing burden of proof. They found that the letters merely stated that appellants "could" possibly live for the stated number of years and that the statements were purely speculative. Dr. Romig did not state that appellants were "expected" to live for that long.

{¶ 39} We agree with trial court and further find that Dr. Romig's opinions were not offered within a reasonable degree of medical certainty.

{¶ 40} Upon review, we find that appellants failed to sufficiently demonstrate that the subject transfers were not improper.

{¶ 41} The features inherent in the transfers made by appellants indicate that the transfers were made with the intent to avoid using the resources for nursing

home care. The trial court, therefore, did not abuse its discretion in finding that there existed reliable, probative, and substantial evidence to support the decision of ODJFS finding that the transfers of funds at issue were improper.

{¶ 42} Based on the foregoing, this court finds that there was insufficient evidence to support the nursing home residents' claims that purchased annuities were not improper transfers of assets for the purpose of meeting eligibility requirements for Medicaid; the residents transferred significant funds to annuities almost immediately before each applied for Medicaid benefits.

{¶ 43} We further find that the "clear and convincing" burden is not unreasonable, unsupportable, or arbitrary as argued by appellants. That burden is required in many different causes of action and is certainly not unattainable.

{¶ 44} Therefore, we conclude that the trial court did not abuse its discretion in affirming the decision of the agency. Accordingly, appellants' first and third assignments of error are not well taken.

## II

{¶ 45} Appellants also argue that the trial court's improper interpretation of Ohio law denied them their rights to equal protection.

{¶ 46} As appellants failed to raise this argument at the lower level, we shall not address this argument on appeal.

{¶ 47} Appellants' second assignment of error is overruled.

{¶ 48} This cause is affirmed.

Judgment affirmed.

HOFFMAN and EDWARDS, JJ., concur.