[Cite as *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4352.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESTATE OF MARCELLA ATKINSON | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| OHIO DEPARTMENT OF JOB | : | |
| AND FAMILY SERVICES | : | Case No. 13CA4 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 12AP06-0305

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        September 27, 2013

APPEARANCES:

For Plaintiff-Appellant

THOM L. COOPER
ELIZABETH DURNELL
36 West Main Street
Centerburg, OH  43011

For Defendant-Appellee

AMY R. GOLDSTEIN
Health and Human Services Section
30 East Broad Street
26th Floor
Columbus, OH  43215-3400

*Farmer, J.*

{¶1} On June 2, 2000, Marcella Atkinson and her husband transferred their home into a revocable trust. Mrs. Atkinson was placed into a long term care facility on April 25, 2011, and a Medicaid application was submitted on June 16, 2011. On August 8, 2011, the home was removed from the revocable trust and placed in Mrs. Atkinson's name. The next day, the home was transferred to Mr. Atkinson.

{¶2} Appellee, Ohio Department of Job and Family Services, determined an improper transfer occurred and approved Medicaid for August 1, 2011 through March 31, 2012 with partial payment due of $5,566.00 for April 2012.

{¶3} Mrs. Atkinson requested a state hearing. By decision dated November 30, 2011, the state hearing upheld the determination. Mrs. Atkinson appealed the decision. By decision dated January 10, 2012, the administrative appeal affirmed the decision.

{¶4} Subsequent to the administrative appeal decision, Mrs. Atkinson passed away. On June 8, 2012, appellant, the Estate of Marcella Atkinson, appealed the decision to the Court of Common Pleas. By judgment entry filed March 7, 2013, the trial court affirmed the administrative appeal decision.

{¶5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶6} "THE AGENCY'S FINDING IN THE STATE HEARING DECISION DATED NOVEMBER 30, 2011 AND ADMINISTRATIVE APPEAL DECISION DATED JANUARY 10, 2012 OF AN IMPROPER TRANSFER IS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE. TWO DISTINCT TRANSFERS

OCCURRED, FIRST FROM A REVOCABLE TRUST TO THE INSTITUTIONALIZED INDIVIDUAL, AND A SECOND TRANSFER FROM THE INSTITUTIONALIZED INDIVIDUAL TO THE COMMUNITY SPOUSE. BOTH TRANSFERS ARE SPECIFICALLY PERMITTED IN THE LAW."

II

{¶7} "APPELLEE'S JANUARY 10, 2012 ADMINISTRATIVE APPEAL DECISION AND NOVEMBER 30, 2011 STATE HEARING DECISION ARE NOT IN ACCORDANCE WITH LAW AS THE LAW SPECIFICALLY ALLOWS FOR TRANSFERS OF TRUST ASSETS TO AN APPLICANT FOR MEDICAID UNDER OHIO ADM. CODE 5101:1-39-27.1, AND SPECIFICALLY ALLOWS FOR A MEDICAID APPLICANT TO TRANSFER THE HOME TO THE COMMUNITY SPOUSE UNDER OHIO ADM. CODE 5101.1-39-07(E)."

III

{¶8} "APPELLEE'S JANUARY 10, 2012 ADMINISTRATIVE APPEAL DECISION AND NOVEMBER 30, 2011 STATE HEARING DECISION ARE NOT IN ACCORDANCE WITH LAW AND UNSUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AS THE AGENCY POINTS TO NO CODE PROVISION WHICH PROHIBITS THE INCREASING OF THE CSRA."

IV

{¶9} "APPELLEE'S JANUARY 10, 2012 ADMINISTRATIVE APPEAL DECISION AND NOVEMBER 30, 2011 STATE HEARING DECISION ARE NOT IN ACCORDANCE WITH LAW AS THEY VIOLATE THE SPOUSAL IMPOVERISHMENT SECTIONS OF THE FEDERAL MEDICAID STATUTE."

I, II, III, IV

{¶10} Appellant claims the trial court erred in determining that appellee's administrative decision was supported by reliable, probative, and substantial evidence and was not contrary to law.  We disagree.

{¶11} The applicable standard of review in an appeal from an administrative agency is governed by R.C. 119.12 which states the following:

The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law.  In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶12} In *Our Place, Inc. v. Ohio Liquor Control Commission,* 63 Ohio St.3d 570, 571 (1992), the Supreme Court of Ohio explained the following:

The evidence required by R.C. 119.12 can be defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.***(2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the

issue.***(3) "Substantial" evidence is evidence with some weight; it must have importance and value.  (Footnotes omitted.)

{¶13}  As stated by this court in *Fire v. Ohio Department of Job & Family Services,* 163 Ohio App.3d 392, 2005-Ohio-5214, ¶ 19 (5th Dist.):

"The appellate court's review is even more limited than that of the trial court.  While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.  On an appeal pursuant to R.C. 119.12, an appellate court shall review evidentiary issues to determine whether the common pleas court abused its discretion in determining whether the agency decision was supported by reliable, probative, and substantial evidence.  Id.  Issues of law, however, are reviewed de novo.  *Sohi v. Ohio State Dental Bd.* (1998), 130 Ohio App.3d 414, 421, 720 N.E.2d 187.

{¶14}  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶15}  Without opinion, the trial court found appellee's decision was correct in that an improper transfer occurred with the Quit Claim Deed of the home by Mrs.

Atkinson, the institutionalized spouse, to Mr. Atkinson, the community spouse.  See, Judgment Entry filed March 7, 2013.

{¶16} The January 10, 2012 administrative appeal decision affirming the state hearing decision found the following:

In your case, you and your spouse transferred ownership of your home into a revocable trust on June 2, 2000.  You were later admitted to a long term care facility on April 25, 2011 and a Medicaid application was submitted on your behalf on June 16, 2011.  On August 8, 2011, the property was removed from the revocable family trust and placed in your name by Quit Claim Deed.  Then, on August 9, 2011, you transferred the home into your spouse's name by Quit Claim Deed.

This series of events shows that while your home was in a trust, the deed to the home was not in your name or your spouse's name, and it was not exempt.  Once the house was placed back into the Community Spouse's name, the home was exempt as a resource.  Further, the resource assessment correctly included the home as an available resource because, at the time, the property was held in the revocable trust.  Accordingly, the Agency correctly determined that the transfer of the home from the trust to the Community Spouse was improper and triggered the improper transfer period.  As such, the hearing decision is correct.

{¶17}  The undisputed facts are set forth in the November 30, 2011 state hearing decision and are undisputed for this appeal:

**FINDINGS OF FACT**

1. On 6/2/2000, the Appellant and her spouse transferred ownership of their home (which they were residing in) into a revocable trust.

2. On 4/25/2011, the Appellant was admitted to a long term care facility.

3. On 6/16/2011 an application was submitted for Medicaid for the appellant.

4. On 8/8/2011, by Quit Claim Deed, the homestead property [was] removed from the revocable family trust and placed in the Appellant's name and then on 8/9/2011, the Appellant, by Quit Claim Deed, transferred the home into her spouses (sic) name.

5. Agency considered an improper transfer occurred and the agency then approved Medicaid with a restricted period of coverage for the Medicaid effective 8/1/2011 through 3/31/2012 with partial payment due of $5566.00 for 4/2012.

6. Agency mailed notice of determination on 9/29/2011.

{¶18}  In its appellate brief at vii, appellant poses four issues for our review:

1. Is the transfer of the home from a revocable trust to the Institutionalized Spouse an improper transfer under Ohio Adm. Code 5101:1-39-07 and Ohio Adm. Code 5101:1-39-27.1?

2. Is the transfer of the home from the Institutionalized Spouse to the Community Spouse an improper transfer under Ohio Adm. Code 5101:1-39-07?

3. Does the Ohio Adm. Code prohibit actions, which increase the value of the Community Spouse Resource Allowance?

4. Does the Agency's decision violate the spousal impoverishment provisions of 42 U.S.C. §1396?

{¶19}  In considering the assignments of error, we will address these issues set forth by appellant.

{¶20}  Appellant argues the transfer of the home from the revocable trust to the institutionalized spouse was not an improper transfer.  As noted by the administrative appeal decision, the revocable trust was a Category two self-settled trust.  See, Ohio Adm.Code 5101:1-39-27.1(C)(2).  As a result, the "corpus of the trust is considered a resource available to the individual" and "[p]ayments from the trust to, or for the benefit of, the individual are considered unearned income."  See, Ohio Adm.Code 5101:1-39-27.1(C)(2)(b)(i) and (ii).  Payments from a trust include any disbursal from the principal or income of the trust, including "actual cash, non-cash or property disbursements, or the right to use and occupy real property."  See, Ohio Adm.Code 5101:1-39-27.1(B)(8).

An "individual" is defined as "an applicant for or recipient of a medical assistance program." See, Ohio Adm.Code 5101:1-39-27.1(B)(5).

{¶21} Therefore, the August 8, 2011 Quit Claim Deed from the trust to the institutionalized spouse was unearned income to that spouse. As such, it could have remained as an asset of the institutionalized spouse to be used for her benefit and would have been a resource available to her.

{¶22} In resolving the first issue, we find the transfer from the revocable trust to the institutional spouse alone was not an improper transfer.

{¶23} Appellant also argues the transfer from the institutionalized spouse to the community spouse was exempt and not an improper transfer. An improper transfer is defined in Ohio Adm.Code 5101:1-39-07(B)(5) as follows:

An "improper transfer" means a transfer on or any time after the look-back date, as defined in paragraph (B)(9) of this rule, of a legal or equitable interest in a resource for less than fair market value for the purpose of qualifying for medicaid, a greater amount of medicaid, or for the purpose of avoiding the utilization of the resource to meet medical needs or other living expenses.

{¶24} A transfer is defined in Ohio Adm.Code 5101:1-39-07(B)(14) as, "any action or failure to act which has the effect of changing an ownership interest of an asset from the individual to another person, or of preventing an ownership interest the individual would otherwise have enjoyed. This includes any direct or indirect method of

disposing of an interest in property."  Improper transfers are defined in Ohio Adm.Code 5101:1-39-07(C) as follows:

(C) The following types of transfers are presumed to be improper transfers for less than fair market value:

(1) Any transfer that reduces the individual's resources and brings the value of their remaining resources within the resource limitation;

(2) Any transfer that has the effect of safeguarding future eligibility by divesting the individual of property that could otherwise be sold and the proceeds then used to pay for support and medical care for the individual;

(3) Any transfer of income-producing real property; or

(4) Any transfer by an individual of an exempt home as defined in Chapter 5101:1-39 of the Administrative Code, whether prior to or after the Medicaid application date.

(5) For an asset to be considered transferred for fair market value or to be considered to be transferred for valuable consideration, the consideration received for the asset must have a monetary value.

(6) A transfer for love and consideration is not considered a transfer for fair market value.  Clear and convincing evidence is required to rebut the presumption that it is an improper transfer.

{¶25} Appellant argues, without addressing the "unearned income" designation, the transfer was of the residential home and therefore was exempt from the

presumption of improper transfer. However, for the home to be exempt, the deed must be in the individual's name or spouse's name. See, Ohio Adm.Code 5101:1-39-31(C)(1)(b). At the baseline date, the home was in neither the institutionalized spouse's nor the community spouse's name. The homestead exemption does not qualify for either the August 8 or 9, 2011 transfers.

{¶26} If the home had remained in the institutionalized spouse's name after the August 8, 2011 transfer, it would not have been an improper transfer because it was the home of the community spouse provided that the transfer was for his sole benefit. See, Ohio Adm.Code 5101:1-39-07(E)(1)(a).

{¶27} The home was included as a resource because it was in the revocable trust. Once the August 9, 2011 transfer occurred, the home was removed from resources available to the institutionalized spouse, and the community spouse received a larger CSRA (community spouse resource allowance) and more of the couple's assets. Arguably, if the home had always been in the institutionalized spouse's name and was the couple's residence, the transfer would not have been improper; that is, if all of this had been accomplished prior to the baseline date and not some two months later.

{¶28} Pursuant to Ohio Adm.Code 5101:1-39-07(B)(10)(d) and (14), all transfers "after the baseline date must be examined to determine if they are improper and subject to a restricted Medicaid coverage period" and whether they included "any direct or indirect method of disposing of an interest in property."

{¶29} The CSRA was determined at a one-time date, the time of institutionalizing on April 25, 2011. See, Ohio Adm.Code 5101:1-39-36(A). Any transfer

that causes an increased CSRA for the community spouse is governed by Ohio Adm.Code 5101:1-39-07(G)(4):

> (G) Any transfer between spouses in order to comply with the medicaid community spouse resource allowance (CSRA) computed pursuant to Chapter 5101:1-39 and Chapter 5101:6-7 of the Administrative Code may not be applied inconsistently with the rules setting limits on CSRA or the minimum monthly maintenance needs allowance (MMMNA).

> (4) Transfer in excess allowed by this rule must be presumed an improper transfer.

{¶30} By transferring the home after having been given the benefit of it in the computation of CSRA, appellant violated Ohio Adm.Code 5101:1-39-07(C)(2) cited above.

{¶31} We conclude the August 9, 2011 transfer was improper and Ohio Adm.Code 5101:1-39-07(C)(2) prohibits the increase of the CSRA.

{¶32} Lastly, appellant argues appellee's decision and reasoning violated 42 U.S.C. § 1396. Pursuant to the federal cases addressing the spousal impoverishment provision, we find no violation by appellee in this case. See, *Hughes v. Colbert,* 872 F. Supp.2d 612, 622 (N.D.Ohio 2012), wherein the United States District Court for the Northern District of Ohio held:

In Count II of the Complaint (*ECF No. 1*), Plaintiffs claim that *42 U.S.C. § 1396p(c)(2)(B)(i)* allows institutionalized spouses to transfer unlimited assets to their community spouse without the transaction being considered an improper transfer. *ECF No. 1 at ¶ 37.* This Court, however, has already rejected that argument in a case involving an inheritance. *Burkholder,* 2010 WL 522843. The plaintiff in *Burkholder* argued that *42 U.S.C. § 1396p(c)(2)(B)(i)* allowed for unlimited transfers. After examining the statutory language, legislative history and relevant case law, the court held that while *§ 1396p(c)(2)(B)(i)* authorizes, generally, transfers to spouses, *42 U.S.C. § 1396r–5(f)(1)* precludes the transfer of assets to the community spouse beyond the CSRA. Section 1396r–5's supersession clause, *§ 1396r–5(a)(1),* requires resolution of any inconsistency between it and *§ 1396p(c)(2)(B)* in the former clause's favor. *Id.* at *2. The Court makes a similar finding in the case at bar.

{¶33} Upon review, we find the trial court did not err in affirming the administrative appeal decision.

{¶34} Assignments of Error I, II, III and IV are denied.

{¶35} The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Baldwin, J. concur.

_____
Hon. Sheila G. Farmer


_____
Hon. William B. Hoffman


_____
Hon. Craig R. Baldwin


SGF/sg 827

[Cite as *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4352.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESTATE OF MARCELLA ATKINSON | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| OHIO DEPARTMENT OF JOB AND FAMILY SERVICES | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 13CA4 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Knox County, Ohio is affirmed.  Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. William B. Hoffman

_____
Hon. Craig R. Baldwin