[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.,* Slip Opinion No. 2015-Ohio-3397.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3397

ESTATE OF ATKINSON, APPELLANT, *v*. OHIO DEPARTMENT OF

JOB AND FAMILY SERVICES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Estate of Atkinson v. Ohio Dept. of Job & Family Servs., Slip Opinion No. 2015-Ohio-3397.*]

*Medicaid—Institutionalized spouse—Transfer of spousal home—42 U.S.C. 1396r-5 and 1396p— Ohio Adm.Code 5160:1-3-36.1 and 5160:1-3-07—Transfer of home by institutionalized spouse to community spouse is permissible under state and federal law when transfer occurs during period between application for Medicaid and notice of Medicaid approval and to the extent that it does not exceed community-spouse resource allowance.*

(No. 2013-1773—Submitted August 20, 2014—Decided August 26, 2015.)

APPEAL from the Court of Appeals for Knox County, No. 13CA4,

2013-Ohio-4352.

_____

**KENNEDY, J.**

**{¶ 1}** In this discretionary appeal from a judgment of the Fifth District Court of Appeals, we determine whether the court of appeals erred in upholding the decision of the Ohio Department of Job and Family Services that the transfer of a home from an institutionalized spouse to a community spouse after a Medicaid application but before the eligibility determination was improper under Medicaid law.

**{¶ 2}** We accepted appellant's two propositions of law:

> I. Federal Medicaid law permits the unlimited transfer of assets from an institutionalized spouse to a community spouse prior to Medicaid eligibility and such transfer does not constitute an improper transfer of assets that would result in a period of restricted eligibility for Medicaid.
>
> II. Ohio Admin. Code 5101:1-39-07 (nka 5160:1-3-07) permits the unlimited transfer of assets from an institutionalized spouse to the community spouse prior to Medicaid eligibility and such transfer does not constitute an improper transfer of assets that would result in a period of restricted eligibility for Medicaid.

**{¶ 3}** We reject appellant's propositions of law. We agree with the state that during the period between an application for Medicaid benefits and the notice of Medicaid approval, federal and state Medicaid law allows an institutionalized spouse to transfer a home or equivalent assets to a spouse living in the community, but only up to the community spouse resource allowance ("CSRA"). Under 42 U.S.C. 1396r-5(c)(2)(B) and Ohio Adm.Code 5160:1-3-36.1(E), the

community spouse must make any amount above his or her CSRA available to the institutionalized spouse. Otherwise, the state may take legal action. In this case, however, the state may have imposed a penalty on the community spouse that is not authorized by law. We therefore remand the case to the trial court to apply 42 U.S.C. 1396r-5(c)(2)(B) and Ohio Adm.Code 5160:1-3-36.1(E) and make adjustments accordingly if any are needed.

### Historical Background of Medicaid

{¶ 4} Congress established the Medicaid program in 1965 to provide federal funds to states to help them provide medical services to the poor. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). In 1972, the program was amended to include assistance to the elderly in long-term institutionalized care. *Id*. at 38. The 1972 Medicaid statute allowed states to consider the resources of the spouse not institutionalized ("the community spouse") in determining whether the institutionalized spouse met the low-asset threshold for Medicaid assistance. *Wisconsin Dept. of Health & Family Servs. v. Blumer*, 534 U.S. 473, 479-480, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). However, the required spend-down limits imposed on couples in order to qualify for long-term care under Medicaid nearly bankrupted some who held their assets jointly: "Many community spouses were left destitute by the drain on the couple's assets necessary to qualify the institutionalized spouse for Medicaid and by the diminution of the couple's income posteligibility to reduce the amount payable by Medicaid for institutional care." *Id*. at 480. Affluent couples, by contrast, could title their assets so as to impoverish the institutional spouse, thereby both qualifying the institutionalized spouse for Medicaid and preserving family wealth. *Id*.

{¶ 5} In response, Congress enacted the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), which added 42 U.S.C. 1396r-5, introducing the CSRA

calculation. Congress also amended 42 U.S.C. 1396p to address agency treatment of annuity purchases. *Hughes v. McCarthy*, 734 F.3d 473, 476 (6th Cir.2013).

{¶ 6} The MCCA permitted the community spouse to "reserve certain income and assets to meet the minimum monthly needs" of that spouse when the institutionalized spouse became eligible for Medicaid. *Blumer* at 477-478. Congress "installed a set of intricate and interlocking requirements with which States must comply in allocating a couple's income and resources." *Id.* at 480. Ohio's regulations that interlock with 42 U.S.C. 1396r-5 are delineated in Ohio Adm.Code 5160:1-3 (Medicaid resource budgeting for institutionalized individuals with community spouse), formerly numbered Ohio Adm.Code 5101:1-39 and identified by the old number in most of the relevant caselaw. Now, under both current federal and Ohio law, "a portion of the couple's assets is reserved for the benefit of the community spouse." *Blumer* at 482; 42 U.S.C. 1396r-5(f)(2)(A); Ohio Adm.Code 5160:1-3-36.1(A)(2). That portion of the couple's assets is the CSRA.

{¶ 7} In anticipation of Medicaid eligibility, a couple may ask that its resources, however titled, be calculated on the day a spouse is institutionalized. *Blumer,* 534 U.S. at 482, 122 S.Ct. 962, 151 L.Ed.2d 935. Half that total is allocated to the community spouse. *Id*. All resources above the CSRA "must be spent before eligibility [for Medicaid] can be achieved." *Id*. at 483. The question here is whether the regulatory framework allows an exception in the law so that the institutionalized spouse may transfer unlimited resources to the community spouse without regard to the CSRA after one spouse is institutionalized but before the couple knows that it is Medicaid-eligible.

### Facts and Procedural History

{¶ 8} The facts are not in dispute. Marcella, now deceased, and Raymond Atkinson put their house in a revocable trust in 2000, naming themselves as trustees. On April 25, 2011, Marcella entered a long-term care facility. On the

first day of Marcella's institutionalization, Medicaid took a "snapshot" of the couple's financial assets pursuant to 42 U.S.C. 1396r-5(c)(1)(A) and (B); *see also* Ohio Adm.Code 5160:1-3-36.1(C)(1). Because the house was in trust and not in the name of either spouse, the house was counted as part of the couple's assets for Medicaid purposes. The Atkinsons' assets totaled $98,320, including $53,750 as the value of the house. Under 42 U.S.C. 1396r-5(c)(1), Raymond's CSRA was half of $98,320, or $49,160. Since this figure, which fluctuates with the consumer price index, *see* 42 U.S.C. 1396r-5(g), did not surpass the Medicaid statutory maximum under 42 U.S.C. 1396r-5(f)(2)(A)(ii), Raymond was entitled to keep this entire sum for his own needs without using it to support Marcella during her institutionalization. 42 U.S.C. 1396r-5(c)(2)(B).

{¶ 9} On June 16, 2011, the couple submitted a Medicaid application for Marcella's care. As a result of the Atkinsons' application, pursuant to Ohio Adm.Code 5160:1-3-36.1(C)(2), the state again examined the couple's resources. The state found the couple's resources to be $89,478.03 at the time of Medicaid application.

{¶ 10} On August 8, 2011, as trustees of the revocable trust, Marcella and Raymond transferred title to the house to Marcella. The next day, August 9, 2011, Marcella transferred the title to Raymond, which means that she transferred $53,750 in value to him. That amount by itself is $4,590 greater than Raymond's CSRA and was in addition to any resources he already possessed.

{¶ 11} On September 28, 2011, the Knox County Department of Job and Family Services ("the agency"), which administers the state program, approved Marcella for Medicaid, effective August 1, 2011. The agency identified Raymond's CSRA as $49,160. As of August 1, the agency identified the couple's "current combined countable resources" as $36,168.58. Subtracting Raymond's $49,160 CSRA from the couple's then remaining assets of $36,168.58 pursuant to what is now Ohio Adm.Code 5160:1-3-36.1(C), the agency declared that the

institutionalized spouse had no countable resources. An institutionalized spouse is Medicaid-eligible if he or she has no more than $1,500 in assets. Ohio Adm.Code 5160:1-3-05(B)(11).

{¶ 12} Notwithstanding approval of Marcella for Medicaid benefits, the agency delayed these benefits until April 2012. The agency asserted that the entire $53,750 transfer to Raymond in August had been an "improper transfer of assets" because it exceeded the CSRA and was for less than fair market value. The agency calculated the penalty by applying 42 U.S.C. 1396p(c)(1)(A) through (E) and dividing the amount of the allegedly improperly transferred asset, $53,750, by $6,023, the average monthly cost of a nursing facility to a private-pay patient.

{¶ 13} The Atkinsons maintained that the transfer from Marcella to Raymond was authorized by 42 U.S.C. 1396p(c)(2)(A)(i) (a spouse is not ineligible for Medicaid for transferring a home to the other spouse) and sought recovery of the $53,750 in benefits that Medicaid refused to pay for Marcella's care. They administratively appealed to defendant-appellee, the Ohio Department of Job and Family Services, claiming first that the transfer of the house to Raymond should be considered a transfer of unearned income and not property and, second, that because the transfer was of the family home, its value was exempt from Medicaid-eligibility consideration. The county agency's determination was upheld.

{¶ 14} Marcella died, and the estate then appealed to the Court of Common Pleas of Knox County. The estate argued that the transfers were authorized under what is now Ohio Adm.Code 5160:1-3-07(E)(1), as well as under 42 U.S.C. 1396p(c)(2)(A) and 1396p(d)(3)(A). Those provisions, the estate claimed, expressly permit, without Medicaid penalty, a transfer of the principal residence to the community spouse so long as the community spouse does not transfer it for less than fair market value. Furthermore, the estate argued, 42

U.S.C. 1396r-5, which specifically addresses the CSRA cap, permits transfers from the institutionalized spouse to the community spouse up to the cap, but nothing in the statute prohibits a larger transfer. The estate added that the agency's imposition of the penalty under 42 U.S.C. 1396p(c)(1)(E) will lead to spousal impoverishment, in violation of Medicaid policy.

{¶ 15} The state countered that the transfer improperly added $53,750 to Raymond's CSRA, thereby sheltering nearly all the Atkinsons' resources from use for Marcella's care. Under 42 U.S.C. 1396r-5(e)(2) and Ohio Adm.Code 5160:1-3-36.1(C)(5)(6), the state continued, the CSRA can be increased only after a hearing. To suggest that the CSRA may be legally increased by transfers such as these, it argued, would be nonsensical. The state further noted that transfer of the corpus of a trust is different from payment of unearned income and, therefore, that the trust corpus cannot be recharacterized as unearned income so as to fit within an exception to the CSRA allowance. The common pleas court affirmed the administrative decision.

{¶ 16} The estate appealed to the Fifth District Court of Appeals. In that appeal, the estate reiterated its earlier points, adding that Congress did not intend to force couples "to choose between their cash assets and their home." The estate again invoked 42 U.S.C. 1396p(c)(2)(A) and 1396p(d)(3)(A) to support its assertion that spouses can transfer the family home between themselves without Medicaid-eligibility consequences. Transfer from one spouse to another is exempt from penalty under Ohio Adm.Code 5160:1-3-07(E)(1)(a), it alleged, and therefore, a hearing was not required to revise the CSRA upward.

{¶ 17} In September 2013, the court of appeals affirmed pursuant to R.C. 119.12, which requires a court to uphold an administrative decision if it is "supported by reliable, probative, and substantial evidence and is in accordance with the law." The court held that the agency properly determined that the transfer of the house was improper under 42 U.S.C. 1396r-5(f) and Ohio

Adm.Code 5160:1-3-07(G)(4), and it upheld the penalty. However, a month later, the Sixth Circuit Court of Appeals decided *Hughes,* 734 F.3d 473, which held that in the context of the purchase of an annuity, 42 U.S.C. 1396p(c)(2)(B)(i) and 1396r-5(f)(1) allow an institutionalized spouse to transfer unlimited assets to the community spouse between the date the spouse is institutionalized and the date that the spouse's Medicaid eligibility is determined. *Id*. at 480. We accepted jurisdiction. 138 Ohio St.3d 1413, 2013-Ohio-4352, 3 N.E.3d 1216.

Legal Analysis

{¶ 18} Because the estate asserts an error of law, our review of the court of appeals decision is de novo. *Bernard v. Unemp. Comp. Rev. Comm.,* 136 Ohio St.3d 264, 2013-Ohio-3121, 994 N.E.2d 437, ¶ 9. We agree with the state that federal and state Medicaid law do not permit unlimited transfers of assets from an institutional spouse to a community spouse after the CSRA has been set. Therefore, the appellee and courts did not make an error of law in that regard. However, we believe that the agency may have erroneously applied 42 U.S.C. 1396p(c)(1)(A) through (E) rather than 42 U.S.C. 1396r-5(c)(2)(B) and Ohio Adm.Code 5160:1-3-36.1 in pursuing a remedy, and so we remand the case to the trial court to review the procedures necessary to address any Medicaid overpayment or underpayment.

Proposition of Law I, Federal Law

{¶ 19} Several federal statutes are at issue here. The first is 42 U.S.C. 1396p, which delineates the rules on liens, adjustments and recoveries, and transfers of assets as they relate to qualifying for Medicaid. 42 U.S.C. 1396p(c)(2)(A)(i) states:

An individual shall not be ineligible for medical assistance by reason of paragraph (1) [which sets penalties for improper transfers] to the extent that—

(A) the assets transferred were a home and the title to the home was transferred to—

(i) the spouse of such individual.

{¶ 20} Also at issue are the penalties under 42 U.S.C. 1396p(c)(1)(A) through (E) for improper transfers and whether they apply to this case. As noted above, improper transfers under 42 U.S.C. 1396p trigger a Medicaid-eligibility penalty calculated by dividing the amount of the improperly transferred asset by the average monthly cost of a nursing facility to a private-pay patient.

{¶ 21} Next are the MCCA provisions, 42 U.S.C. 1396r-5. The first of relevance is the supersession clause, 42 U.S.C. 1396r-5(a)(1). It says:

In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter * * * which is inconsistent with them.

{¶ 22} The second is 42 U.S.C. 1396r-5(f)(1). It says:

An institutionalized spouse may, without regard to section 1396p(c)(1) of this title, *transfer an amount equal to the community spouse resource allowance * * *,* but only to the extent the resources of the institutionalized spouse are transferred to (or for the sole benefit of) the community spouse. *The transfer under the preceding sentence shall be made as soon as practicable after the date of the initial determination of eligibility*, taking into account such time as may be necessary to obtain a court order

under paragraph (3) [requiring the community spouse to support the institutionalized spouse].

(Emphasis added.)

{¶ 23} One clarification is needed. While the language of the statute appears to allow the institutional spouse to transfer the entire amount of the CSRA to the community spouse regardless of the assets the community spouse already holds, the statute in fact simply authorizes the institutionalized spouse to bring the community spouse's assets up to the CSRA level. *Blumer,* 534 U.S. at 482, 122 S.Ct. 962, 151 L.Ed.2d 935, fn. 5, citing the brief for the United States as amicus curiae. It does not create a new loophole through which a community spouse may exceed the CSRA restrictions. *Id.*

{¶ 24} We first hold that pursuant to the supersession clause, 42 U.S.C. 1396r-5, 42 U.S.C. 1396p does not apply to this case. 42 U.S.C. 1396p predates 42 U.S.C. 1396r-5 and does not mention the CSRA, which Congress enacted to control asset allocation between spouses. *Blumer* at 482. Therefore, only 42 U.S.C. 1396r-5 is relevant to the transfer of assets between spouses from institutionalization to Medicaid eligibility. Because 42 U.S.C. 1396r-5(a)(1) expressly supersedes 42 U.S.C. 1396p, we conclude that transfers between spouses are not unlimited after the snapshot date and before Medicaid eligibility. Those transfers are proper only up to the amount that fully funds the CSRA. 42 U.S.C. 1396r-5(c)(2)(B).

{¶ 25} Even ignoring 42 U.S.C. 1396p, the estate argues that 42 U.S.C. 1396r-5(f)(1) provides a legitimate loophole, allowing unlimited transfers between spouses before Medicaid eligibility. First, according to the estate, the statute's directive that "[a]n institutionalized spouse *may * * * transfer an amount equal to the community spouse resource allowance*" does not prohibit transfer of a greater amount. (Emphasis added.) Second, the estate highlights the following

language: "The transfer [of resources from the institutionalized spouse to the community spouse] under the preceding sentence *shall be made as soon as practicable after the date of the initial determination of eligibility * * *.*" (Emphasis added.) 42 U.S.C. 1396r-5(f)(1). In other words, according to the estate, the statute puts no limit on transfers made after institutionalization but before eligibility determination. Otherwise, it argues, that sentence would have no relevance. The state continues to insist that the entire transfer is improper under the law and subject to penalty.

{¶ 26} We find 42 U.S.C. 1396r-5 straightforward, and so did the United States Supreme Court. In *Blumer,* 534 U.S. at 482, 122 S.Ct. 962, 151 L.Ed.2d 935, fn. 5, the court stated:

> Under § 1396r-5(f)(2), the CSRA denotes the amount by which the community spouse's "spousal share" of the couple's resources falls below the resource allowance set by the State pursuant to § 1396r-5(f)(2)(A). *Assets covering this shortfall* are automatically excluded from consideration in the eligibility determination and transferred to the community spouse after eligibility is achieved. §§ 1396r-5(f)(1), (2).

(Emphasis added.) The second sentence of 42 U.S.C. 1396r-5(f)(1) simply acknowledges that additional calculations and procedures are necessary after Medicaid eligibility has been determined.

{¶ 27} Commentators have underscored this interpretation. "For Medicaid eligibility purposes, the amount of resources that [the] institutionalized spouse may transfer to [the] community spouse is limited to [the] maximum amounts that [the] community spouse may retain under [the] CSRA provision." Kreiner & Durbin, *Ohio Elder Law,* Section 8:54 (2014). *See also* Krauskopf, Brown,

Tokarz, Bogutz & Lehman, 1 *Elderlaw: Advocacy for the Aging*, Section 11:31 (2d Ed.2013), fn. 1.

**{¶ 28}** Because of the above analysis, while we agree with the state on the CSRA limits on transfers, we see no authority for applying the penalties of 42 U.S.C. 1396p(c)(1)(E), which docked Raymond the entire amount of the value of his house, part of which already belonged to him. 42 U.S.C. 1396p(c)(1)(E) simply doesn't pertain to 42 U.S.C. 1396r-5 transfers between spouses.

Proposition of Law II, State Law

**{¶ 29}** Because 42 U.S.C. 1396a(a)(17) provides that states must establish standards for Medicaid assistance that are consistent with federal law, we agree with the state that the transfers above the CSRA are improper under Ohio Adm.Code 5160:1-3-07. To that end, Ohio Adm.Code 5160:1-3-07(G) states:

> Any transfer between spouses in order to comply with the medicaid community spouse resource allowance (CSRA) computed pursuant to Chapter 5101:1-39 and Chapter 5101:6-7 of the Administrative Code may not be applied inconsistently with the rules setting limits on the CSRA or the minimum monthly maintenance needs allowance (MMMNA).

A transfer exceeding the CSRA may be permitted only after a hearing. Ohio Adm.Code 5160:1-3-07(G)(2). The Atkinsons have not sought a hearing to increase the CSRA, and so the CSRA cannot be increased by the transfer. The language of the Ohio Administrative Code requires this result.

**{¶ 30}** We are also struck by the procedural history of *Williams v. Ohio Dept. of Job & Family Servs*, 3d Dist. Logan No. 8-11-18, 2012-Ohio-4659, *appeal not accepted*, 134 Ohio St.3d 1507, 2013-Ohio-1123, 984 N.E.2d 1102. *Williams* highlights the agency's own inconsistencies in applying state Medicaid

law regarding transfer penalties. In *Williams*, the state agency had reversed the decision of the Logan County Department of Jobs and Family Services that had penalized a couple for the entire amount of a transfer. By the time of the appeal, the state agency had already reversed the local agency's decision, concluding that "the penalty amount should only consist of the difference between the CSRA and the value of the resources that [the community spouse] received as a result of the improper transfer." *Id*. at ¶ 34. The court of appeals affirmed, although we see no authority for applying the penalty provisions of 42 U.S.C. 1396p to these facts.

**{¶ 31}** Instead, Ohio Adm.Code 5160:1-3-36.1(E) delineates the steps through which the agency is to notify the community spouse to make available the resources above the CSRA to the institutionalized spouse. After notification, the community spouse is expected to cooperate. "[L]egal action may be taken against the community spouse for refusing to do so." *Id*. This procedure is consistent with 42 U.S.C. 1396r-5(c)(1), which provides the federal rules for treatment of resources. Neither federal nor state law supports the agency's confiscation, after the CSRA has been set, of the entire amount of transferred assets, some or all of which may have already been allocated to the community spouse on the snapshot date.

**{¶ 32}** We are mindful of the estate's argument that *Hughes*, 734 F.3d 473, compels a different result. We do not find *Hughes* to be apposite. *Hughes* involved an annuity. Annuities are specifically addressed in 42 U.S.C. 1396p, which subjects their purchase to special rules and is not applicable under these facts.

Conclusion

**{¶ 33}** We therefore reject appellant's propositions of law. We agree with the state that during the period between an application for Medicaid benefits and the notice of Medicaid approval, federal and state Medicaid law allows an institutionalized spouse to transfer a home or equivalent assets to a spouse living

in the community, but only up to the CSRA. Under 42 U.S.C. 1396r-5(c)(2)(B) and Ohio Adm.Code 5160:1-3-36.1(E), the community spouse must make any amount above this limit available to the institutionalized spouse. Otherwise, the state may take legal action. In this case, however, the state may have imposed a penalty on the community spouse that is not authorized by law. We therefore remand the cause to the trial court to apply 42 U.S.C. 1396r-5(c)(2)(B) and Ohio Adm.Code 5160:1-3-36.1(E) and make adjustments accordingly if any are needed.

Judgment affirmed

and cause remanded.

PFEIFER, O'DONNELL, and FRENCH, JJ., concur.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting**.

{¶ 34} I respectfully dissent.

{¶ 35} This case clearly demonstrates the impenetrable fog that almost all senior citizens venture into when they attempt to protect their worldly savings from the financial disaster known as assisted living. This case is not about the Atkinson family, although their name is on the caption. Both of the Atkinsons have died since this suit began. Were they alive today, they would undoubtedly regret their attempt to place their $53,750 ranch home into a revocable trust, then into the name of only one spouse, and then into the name of the "community" spouse. No, this case presents a genuine opportunity for this court to provide guidance to countless Ohioans who follow in their footsteps.

{¶ 36} I would hold that the transfer of a home between spouses is not an improper transfer at any time prior to the granting of Medicaid eligibility, period. First, it is critical to note that there is explicit language in federal law and the Ohio Administrative Code permitting transfer of the home between spouses.

Second, the house is not a countable resource for purposes of computing the community-spouse resource allowance ("CSRA"). And third, the revocable-trust language in the federal CSRA law excludes the transfer of the home from the definition of improper transfer. It is that simple. What this family did *is and was* permitted by state and federal law.

**{¶ 37}** The regulatory framework clearly states that the transfer of the home between spouses is not an improper transfer. 42 U.S.C. 1396p(c)(2)(A)(i) expressly provides that a spouse is not ineligible for Medicaid for transferring a home to the other spouse. And Ohio Adm.Code 5160:1-3-07(E) expressly states that a transfer of the home between spouses is not an improper transfer. The majority opinion acknowledges that the Medicare Catastrophic Coverage Act permits the community spouse to reserve certain income and assets to meet the minimum monthly needs of the community spouse when the institutionalized spouse becomes eligible for Medicaid. Despite this acknowledgment and despite the plain language of 42 U.S.C. 1396p(c)(2)(A)(i) and Ohio Adm.Code 5160:1-3-07(E) explicitly stating that the transfer of the home from one spouse to the other is not an improper transfer, the majority holds that the transfer of the Atkinsons' home was an improper transfer to the extent that it was in excess of the CSRA. It was not. The majority concludes and holds that "pursuant to the supersession clause, 42 U.S.C. 1396r-5, 42 U.S.C. 1396p does not apply to this case." Majority opinion at ¶ 24. I disagree.

**{¶ 38}** In *Hughes v. McCarthy,* 734 F.3d 473 (6th Cir.2013), the Sixth Circuit considered whether the transfer of an asset (an annuity) by the institutionalized spouse after institutionalization but before the initial eligibility determination is improper under 42 U.S.C. 1396r-5(f)(1) because the transfer exceeds the CSRA, even though it was for the sole benefit of the community spouse under 42 U.S.C. 1396p(c)(2)(B)(i). As here, the Ohio Department of Job and Family Services ("ODJFS") argued that a transfer of assets in excess of the

CSRA, even if made before the determination of eligibility, is improper because 42 U.S.C. 1396r-5(a)(1) states that "the provisions of this section supersede any other provision of this subchapter * * * which is inconsistent with them," which includes 42 U.S.C. 1396p(c)(2)(B)(i).

{¶ 39} The federal appellate court disagreed. The court noted that the language of 42 U.S.C. 1396r-5(f)(1) refers only to transfers after the initial determination of eligibility while saying nothing about transfers before that date or penalties for such transfers. Thus, (f)(1) does not supersede 1396p(c)(2)(B)(i), as there is no inconsistency. *Id.* at 479.

{¶ 40} The federal court held that in order to avoid rendering 1396p(c)(2)(B)(i) superfluous, the provisions must be viewed as operating at distinct temporal periods. Thus, when assets are transferred to the community spouse for the sole benefit of that spouse, 42 U.S.C. 1396p(c)(2)(B)(i), *before* the institutionalized spouse is determined to be eligible for coverage, the transfer provision of 42 U.S.C. 1396p(c)(2) controls, and the transfer is not improper. *Hughes* at 480, quoting *Morris v. Oklahoma Dept. of Human Servs.,* 685 F.3d 925, 938 (10th Cir.2012). *See also Koenig v. Dungey,* 2014-Ohio-4646, 19 N.E.3d 1006 (1st Dist.) By contrast, when the transfer occurs *after* the institutionalized spouse is deemed eligible for coverage, 42 U.S.C. 1396r-5(f)(1) controls, and the transfer is improper if it exceeds the CSRA. That is not what happened here.

{¶ 41} In this case, we are presented with a transfer of the marital home between spouses prior to the initial determination of Medicaid eligibility. Specifically, Marcella Atkinson was institutionalized on April 25, 2011. She transferred the home to her husband on August 9 of that year. Her eligibility for Medicaid was approved seven weeks later, on September 28. Under both federal and Ohio law, any transfer of the home from the institutionalized spouse to the community spouse before Medicaid eligibility is determined does not affect the

eligibility of the donor spouse, provided that the transfer is for the sole benefit of the receiving spouse. 42 U.S.C. 1396p(c)(2)(A); Ohio Adm.Code 5160:1-3-07(E)(1)(a). It is after September 28, 2011, and not before, that the limitations in 42 U.S.C. 1396r-5(f)(1) on transfers exceeding the CSRA apply.

{¶ 42} Suspending for a moment my disagreement with the majority's pronouncement that 42 U.S.C. 1396p does not apply in this case, the majority's analysis fails based on the application of 42 U.S.C. 1396r-5 alone. This is because the home is explicitly excluded from the definition of "resources" for purposes of establishing the CSRA. 42 U.S.C. 1396r-5(c)(5)(A) and 42 U.S.C. 1382b(a). Accordingly, it was error for ODJFS to include the value of the home in the calculation of the CSRA in the first place. It makes no difference that the home was in the revocable trust when the CSRA was established. The facts of this case demonstrate that the Atkinsons retained every right, title, and interest in their home, both legal and equitable, including the power to place the home in and remove the home from the revocable trust—hence the term "revocable." Thus, the Atkinsons have always owned the home, whether it was held outright or in trust. I would note here that even including the dollar value of the home in the CSRA, Raymond's CSRA of $49,160 did not exceed the maximum federal statutory limit of $60,000 for a CSRA under 42 U.S.C. 1396r-5(f)(2)(A)(ii).

{¶ 43} Moreover, 42 U.S.C. 1396r-5 specifically states that trust income shall be considered income available to each spouse and shall be attributed in accordance with 42 U.S.C. 1396p. The revocable-trust language in 42 U.S.C. 1396p(d) provides that the corpus of the trust shall be considered resources available to the individual, that payments from the trust shall be considered income available to the individual, and that any other payments from the trust shall be considered a disposition by the individual for purposes of subsection (c). Subsection (c) of 42 U.S.C. 1396p states that the transfer of the home between spouses does not create ineligibility for Medicaid. 42 U.S.C. 1396p(c)(2)(A)(i).

My view is that these provisions are consistent and should be applied consistently with each other. Read together, the applicable provisions of federal and state law and regulations demand that the transfer of the residential home cannot affect Mrs. Atkinson's eligibility for Medicaid, regardless of the revocable trust.

{¶ 44} Oral arguments were presented in this case on August 20, 2014. Since that time, the United States District Court for the Southern District of Ohio granted a preliminary injunction prohibiting ODJFS "from interpreting and implementing [Ohio regulations] to impose restrictive coverage upon [the plaintiffs in that case] due to the transfer of community resources * * * for the sole benefit of their respective community spouse[s] * * * after the date of institutionalization but before the institutionalized spouse's Medicaid eligibility is or was determined." *Wagner v. McCarthy,* S.D. Ohio No. 1:14cv00648, 2014 WL 4805284, *1 (Sept. 26, 2014). ODJFS was further enjoined from taking any position inconsistent with the decision in *Hughes v. McCarthy*, 743 F.3d 473, in future proceedings involving the plaintiffs' Medicaid applications.

{¶ 45} Thereafter, ODJFS repealed several administrative rules that were applied in the course of the procedural history of this case. Notably, the list of repealed rules includes the rule that required the deed of the home to be in the individual's name, Ohio Adm.Code 5160:1-3-31, "Medicaid: treatment of the home," and the Ohio trust rule, Ohio Adm.Code 5160:1-3-27.1, "Medicaid: trusts." The list of repealed rules also includes Ohio Adm.Code 5160:1-3-36.1, "Medicaid: resource budgeting methodology for institutionalized individuals with a spouse in the community," which is the rule the majority orders the trial court to apply to this case on remand. In addition to my disagreement with the majority's legal conclusions, I am troubled that this court would remand a case for application of a rule that no longer exists.

{¶ 46} It is clear that the law treats the marital home very carefully to prevent spousal impoverishment at the end of life. And that is the public policy

18

we should be embracing. Based on the plain language of the federal statutes and the Ohio Administrative Code, as well as the holding of the United States Court of Appeals for the Sixth Circuit in *Hughes v. McCarthy,* 734 F.3d 473, I would hold that the transfer of the home between spouses prior to Medicaid eligibility being established is not an improper transfer and is not subject to the CSRA cap. I dissent.

O'CONNOR, C.J., and LANZINGER, J., concur in the foregoing opinion.

_____

Calfee, Halter & Griswold, L.L.P., Maura L. Hughes, and Alexander B. Reich; and Cooper, Adel & Associates, L.P.A., Thom L. Cooper, Mitchell J. Adel, and Nathan T. Simpson, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Stephen P. Carney, Deputy Solicitor, and Amy R. Goldstein and Rebecca L. Thomas, Assistant Attorneys General, for appellee.

_____