[Cite as *Herubin v. Ohio Dept. of Job & Family Servs.*, 2022-Ohio-3243.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

BELLA HERUBIN AS EXECUTOR OF THE
ESTATE OF JOSEPH T. HERUBIN,

Plaintiff-Appellant,

v.

OHIO DEPT. OF JOB AND FAMILY SERVICES,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0109**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2021 CV 12

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John A. McNally, III*, John A. McNally, III, Co., LPA, 100 East Federal St., Suite 600, Youngstown, Ohio 44503 for Plaintiff-Appellant and

*Atty. Julie E. Brigner*, *Atty. Kelly Richardson,* Health and Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215 for Defendant-Appellee.

Dated:  September 14, 2022

**Robb, J.**

**{¶1}** Appellant Bella Herubin as Executor of the Estate of Joseph T. Herubin appeals the decision of the Mahoning County Common Pleas Court affirming the administrative decision made by Appellee Ohio Department of Job and Family Services (ODJFS), which upheld the denial of the applicant's Medicaid application. The estate contends the common pleas court should have ordered ODJFS to approve the Medicaid application because the pandemic made it factually impossible for the decedent's former authorized representative (his son) to comply with verification requirements, as he was unable to secure an appointment with a bank to set up a trust and open a trust account. For the following reasons, the common pleas court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶2}** On March 20, 2020, Joseph T. Herubin filed an application for Medicaid. Specifically, he sought Long-Term Care (LTC) benefits, as he was residing at a nursing home facility. He appointed his son, Mark Herubin, as his authorized representative to assist in the process. Mahoning County Department of Job and Family Services (MCDJFS) interviewed the son on March 26, 2020 and informed him of the verification and eligibility requirements.

**{¶3}** The same day, a checklist was mailed to the applicant and the son, which listed the required verifications with a due date of April 6, 2020. It contained a warning that the failure to submit the requested information may result in the denial of the application. One item on the checklist was the value of life insurance. The checklist was accompanied by instructions on proper ways to spend down resources and explained there was a resource limit of $2,000. Also included was information on Medicaid estate recovery upon the death of an institutionalized recipient.

**{¶4}** In addition, the checklist explained a Qualified Income Trust (QIT) was required in order to become eligible if the applicant's monthly gross income exceeded $2,349. An instructional QIT packet was attached, clearly stating a person with income over that amount would not become eligible until a valid QIT was executed and a financial account for the trust was established for the deposit of income above the eligibility level. The applicant was encouraged to consult an attorney with legal questions. The applicant

was provided with a hotline number for QIT questions and a list of local banks where a QIT *account* can be set up, with an advisement some nursing homes assist with the QIT process or "you may want to consult with your own attorney." There was also a link to a standard QIT form.

{¶5} After the son provided some verifications, the agency's July 7, 2020 letter listed the outstanding verifications with a deadline of July 22, 2020. Again, the letter: warned that the failure to submit the requested information may result in the denial of the application; advised the Medicaid resource limit was $2,000; and asked for life insurance cash values. As the applicant's monthly income was $4,160, the letter required the establishment of a QIT with a deposit of $1,811 (based on the applicant's monthly income exceeding $2,349). *See* Ohio Admin.Code 5160:1-6-03.1(B) (if an individual is ineligible under base Medicaid due to excess income, he may become eligible if his income is equal to or less than the special income level {SIL}, which was $2,349 effective 1/1/20).

{¶6} On this topic of the required QIT, the July 20, 2020 response letter from the applicant's son said he called several Chase Bank branches in the area and was advised "this is a matter that is handled by the courts." He said he then called the hotline in order to obtain documents for his completion and submission to Chase Bank.

{¶7} As to the agency's request for the face value, cash value, and ownership of the New York Life insurance policy that deducted money for a premium from the applicant's Chase bank account, the son said there was no life insurance policy from this company in the applicant's name. There was no explanation for the premium deducted from the account (which can be seen on the bank statement), and there was no statement about whether the policy was in the spouse's name. (The agency had also asked for the cash value of the applicant's life insurance policies through John Hancock, and the son obtained a letter from that company showing the surrender value for two policies.)

{¶8} The son's letter also said the applicant's attorney was in the process of transferring real property back to the applicant and the applicant's spouse (Bella Herubin) which had been conveyed to the son and his brother on March 6, 2020. (Later, deeds reconveying the property to Bella Herubin were signed by each of the applicant's sons on August 20 and September 3, 2020.)

{¶9} On July 22, 2020, the applicant died. On July 30, 2020, MCDJFS issued a denial of the Medicaid application. The decision said eligibility was determined based on

Case No. 21 MA 0109

the application and the applicant failed to provide the requested verifications. The applicant's wife, through an attorney, requested a state hearing with ODJFS.

{¶10} The state hearing proceeded on November 23, 2020. The representative from MCDJFS testified as to the history, the failed verifications, and the income of $4,160, which placed the applicant over the limit without a QIT and an accompanying account. It was disclosed that between the issuance of the two written checklists, the son was also orally advised that the applicant would need to establish a QIT to be eligible for LTC Medicaid. The applicant's attorney testified the family told him they submitted all the needed documents, noting he was only involved in the deeds. The record was therefore left open for several days so any additional evidence of documents submitted to MCDJFS could be added to the record. No further evidence on the life insurance, the QIT, or a QIT account was provided.

{¶11} On December 1, 2020, the "state hearing decision" affirmed the denial of the Medicaid application. This decision noted the son said he checked with New York Life and learned his father had no existing policy. The decision also pointed to the disclosure in the July 20, 2020 letter that the son started looking into a QIT, which confirmed that no QIT or account had been established before the applicant died on July 22, 2020. It was concluded: "Without this account established, the Applicant would have been over the SIL of $2,349 based on his monthly countable income of $4,160. Thus, even if the verification issue were set aside, MCDJFS would still have been correct to deny this application due to the Appellant being over the income limit for potential LTC Medicaid eligibility."

{¶12} A request for an administrative appeal from the state hearing decision was filed with ODJFS. On December 10, 2020, the state hearing decision was affirmed. After reviewing the facts, the ODJFS decision found: "The cash value of the New York Life policy was never provided nor was evidence of the establishment of a QIT ever received by the Agency." It was concluded the state hearing decision and the MCDJFS decision were correct because the verifications were not received or in the record (even after additional time was provided based on the attorney's statement that he was told the required documents were sent).

{¶13} From this "administrative appeal decision," a timely appeal was filed in the common pleas court on January 5, 2021. The court set a briefing schedule with a non-

oral hearing date. (4/23/21 & 6/20/21 J.E.). The common pleas court granted a motion for substitution of parties upon learning the decedent's spouse had just been appointed as the executor of his estate. (2/2/21 J.E.).

{¶14} The estate's merit brief in the common pleas court alleged the administrative decision was "procedurally defective" because the son made every effort to comply with the requirements of MCDJFS but was thwarted by COVID-19 closures. The brief said the son encountered issues in dealing with documentary requests in the height of the pandemic "specifically in July-August, 2020." An affidavit from the son was filed, which stated: in the summer of 2020, the nursing home financial staff directed him to Chase Bank on a certain street to set up the trust, but it was locked due to the pandemic and his calls were unsuccessful; he then called two other Chase Bank branches upon the urging of the nursing home, but they were closed; he made an appointment for his father with the Chase Bank branch in Salem; and his father died a few days before the appointment. The affidavit was signed on July 27, 2021.

{¶15} The response brief filed by ODJFS argued the administrative decision was supported by reliable, probative, and substantial evidence and in accordance with law, as the applicant failed to demonstrate a QIT was established and funded in order to decrease his countable income, which exceeded the eligibility limits. ODJFS pointed out Appellant's argument on appeal did not apply to the failure to provide verification of the insurance policy through New York Life. The agency further pointed out the estate did not contest these facts and the sole argument on appeal asked the court to ignore the law. ODJFS cited to the waiver doctrine, arguing the claim about the pandemic affecting the establishment of a QIT was not raised in the state hearing. ODJFS also asked the court to strike the affidavit as it was outside the certified administrative record.

{¶16} ODJFS additionally pointed out there was no dispute the applicant's income was over the eligibility limit. It was explained that even if a QIT could somehow be deemed established in July 2020 (when the son claimed he encountered a delay), such a decision would not provide for past Medicaid coverage because the three-month retroactive eligibility for LTC only applies if the applicant was income-eligible at the time. *See* Ohio Admin.Code 5160:1-2-01(M)(1)(b)(iii). As discussed in the next section, the agency also claimed the common pleas court lacked jurisdiction due to the initial

captioning of the notice of appeal in the name of the decedent in the care of his family, which was how ODJFS captioned the case in the administrative proceedings.

{¶17} The estate's reply brief responded to the jurisdictional argument by citing the statutory provision allowing the notice of appeal to be extended to six months for good cause. The estate then said the only fact at issue was whether it was "factually impossible" to comply with the Medicaid requirement to establish a QIT in the summer of 2020. As to life insurance verification, the estate claimed the applicant could not be expected to prove a negative and pointed out the existence of such a policy was denied in the son's July 2020 letter.

{¶18} On November 10, 2021, the common pleas court affirmed the administrative decision. The court struck the son's affidavit upon concluding the court was confined to the record as certified. The court found the claim of hardship in establishing a QIT due to the pandemic was waived because it was not raised at the administrative hearing, pointing out this was the estate's only argument on appeal. The court concluded the administrative appeal decision was supported by reliable, probative, and substantial evidence and in accordance with law. The estate filed a timely notice of appeal in this court.

JURISDICTION OF THE COMMON PLEAS COURT

{¶19} Before reaching the estate's assignment of error, we address the jurisdictional argument in ODJFS's brief. It is argued the common pleas court lacked subject matter jurisdiction over the administrative appeal because the notice of appeal was not originally filed by the estate, even though the court allowed substitution of the estate soon after the appeal was filed. It is pointed out the statute defining the "appellant" in the notice of appeal invoking the common pleas jurisdiction does not specifically include an authorized representative (which is discussed in administrative regulations on internal appeals.[1])

---

[1] It is also noted Civ.R. 17 (A) states the following: "Real party in interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, *or a party authorized by statute* may sue in his name as such representative without joining with him the party for whose benefit the action is brought." (Emphasis added.)

**{¶20}** According to the relevant statute, "An appellant who disagrees with an administrative appeal decision of the director of job and family services or the director's designee issued under division (C) of this section may appeal from the decision to the court of common pleas pursuant to section 119.12 of the Revised Code." R.C. 5101.35(E). "The appellant shall mail the notice of appeal to the department of job and family services and file notice of appeal with the court within thirty days after the department mails the administrative appeal decision to the appellant." R.C. 5101.35(E)(3). This statute defines "Appellant" as "an applicant, participant, former participant, recipient, or former recipient of a family services program who is entitled by federal or state law to a hearing regarding a decision or order of the agency that administers the program." R.C. 5101.35(A)(2).

**{¶21}** "When a statute confers a right to appeal, the appeal can be perfected only in the mode the statute prescribes." *Pryor v. Director, Dept. of Job & Family Servs.*, 148 Ohio St.3d 1, 2016-Ohio-2907, 68 N.E.3d 729, ¶ 12 (where the administrative appeal statute expressly said the "filing of the notice of the appeal" was the only jurisdictional requirement, the inclusion of the information required in the notice of appeal itself is the only condition precedent to vest jurisdiction in the court). "[N]aming proper parties and fulfilling service requirements are jurisdictional requirements in cases that involve statutes that clearly require such for jurisdiction." *Spencer v. Freight Handler Inc.*, 131 Ohio St.3d 316, 2012-Ohio-880, 964 N.E.2d 1030, ¶ 19.

**{¶22}** The January 5, 2021 timely notice of appeal to the common pleas court was captioned "Joseph Herubin c/o The Family of Joseph Herubin." (This was the caption used on page one of the administrative agency's December 10, 2020 order appealed to the common pleas court). On January 29, 2021, the estate filed a motion to be substituted as the party filing the appeal. The common pleas court granted the substitution replacing "Joseph Herubin c/o The Family of Joseph Herubin" with "Joseph Herubin, Bella A. Herubin, Executor of the Estate of Joseph T. Herubin Sr." (2/2/21 J.E.).

**{¶23}** ODJFS claims the notice of appeal was not captioned in the name of a proper appellant as the applicant was deceased and the family did not meet the specific statutory definition of appellant. Although the case proceeded through the administrative process without a personal representative appointed by the probate court, Ohio Admin.

Case No. 21 MA 0109

Code 5101:6-3-02(A)(1),(3)(a) allows an authorized representative of the decedent to request a state hearing administrative appeal.

{¶24} ODJFS points out the court process is distinguishable because a decedent has no legal capacity to file a lawsuit or an appeal to a court and his "family" is not a legally recognized substitute for the decedent. Because "a party must actually or legally exist," a deceased person cannot be a party to an action. *Baker v. McKnight*, 4 Ohio St.3d 125, 127, 447 N.E.2d 104 (1983) (while adopting a theory allowing for correction of a misnomer for a deceased defendant). "The executor of an estate, as a legal representative, settles the decedent's affairs and 'stands in [the decedent's] shoes' as far as entitlement to benefits is concerned." *Hopper v. Nicholas*, 106 Ohio St. 292, 302, 140 N.E. 186 (1922).

{¶25} ODJFS agrees the estate would be the proper party. However, ODJFS contends the January 5, 2021 notice of appeal did not vest the common pleas court with jurisdiction because it was not filed by the estate (which did not exist at the time) and the subsequent substitution could not save the appeal from this defect. ODJFS also complains that in addition to adding the estate as a party, the substitution and the court's entry said, "Bella A. Herubin, individually, shall remain as a Plaintiff," even though her name was not previously specified in the notice of appeal. (Rather, the decedent's family in general was in the caption after his name and "c/o"). ODJFS points out a spouse does not meet the definition of an appellant in R.C. 5101.35(A)(2) even if the "Family" portion of the prior caption were to be construed as naming the spouse.

{¶26} Pertinent to the latter topic, the Eighth District has concluded a nursing home previously named as the authorized representative had standing to file the notice of appeal in the common pleas court. *Tiggs v. Ohio Dept. of Job & Family Servs.*, 2018-Ohio-3164, 118 N.E.3d 985, ¶ 28 (8th Dist.). Here, the decedent named his son as the authorized representative, and the decedent's spouse requested the state hearing appeal from the initial denial. *See* Ohio Admin.Code 5101:6-3-02(A)(1) (the authorized representative can request state hearing), (3)(a) (written authorization as authorized representative is not required if it cannot be obtained because of the individual's death or incapacity and the representative is acting in the individual's best interest), (b) (applicant's spouse does not require written authorization as authorized representative in order to request a state hearing). However, in *Tiggs*, the applicant was still alive when the

authorized representative filed the appeal, which they found distinguishable from cases involving a theory of lapsed authority.

**{¶27}** In any event, the case at bar involved a substitution of parties which amended the notice of appeal and which is distinct from any case with a substitution of parties occurring after the notice of appeal time ended. The statute providing the notice of appeal deadline in the common pleas court contains the following special provision cited by Appellant:

> The appeal shall be governed by section 119.12 of the Revised Code except that: * * * The appellant shall mail the notice of appeal to the department of job and family services and file notice of appeal with the court within thirty days after the department mails the administrative appeal decision to the appellant. *For good cause shown, the court may extend the time for mailing and filing notice of appeal, but such time shall not exceed six months* from the date the department mails the administrative appeal decision. Filing notice of appeal with the court shall be the only act necessary to vest jurisdiction in the court.

(Emphasis added.) R.C. 5101.35(E)(3). *Compare* R.C. 119.12(D) (15 days to appeal unless otherwise provided by law specific to a particular agency). Therefore, even if no notice of appeal had been filed within 30 days of December 10, 2020, the court could have extended the time for good cause and allowed an original notice of appeal to be filed on January 29, 2021 (and for months thereafter).

**{¶28}** The estate's January 29, 2021 motion to be substituted as the party who filed the appeal was filed a mere 24 days after the timely notice of appeal was filed and less than three weeks after the general 30-day appellate date had passed. The letters of authority from the probate court were attached, showing the decedent's wife was appointed as the executor on January 22, 2021.

**{¶29}** The common pleas court's grant of substitution is essentially a finding of good cause for the amendment of the notice of appeal via the substitution of parties so that the executor of the decedent's estate was the appellant on the decedent's behalf. The court could have allowed an extension to file the notice of appeal up to six months after the administrative decision. R.C. 5101.35(E)(3). Consequently, a timely notice of

appeal was brought by the admittedly proper party well within the time for filing an extended notice of appeal.

{¶30} Notably, ODJFS made this same jurisdictional argument in its August 30, 2021 response brief to Appellant's merit brief filed in the common pleas court, arguing a decedent cannot file an action or appeal in a court without being represented by the fiduciary of his estate and the February 2, 2021 substitution did not cure the jurisdictional defect. The common pleas court implicitly rejected this argument by proceeding to address Appellant's administrative appeal, thereby reaffirming its prior decision allowing substitution and implicitly confirming the existence of good cause for the amendment of the notice of appeal. Due to this history and the statute specifically allowing the common pleas court to extend the date for a complete notice of appeal by up to six months for good cause, the jurisdictional argument by ODJFS is rejected.

{¶31} Lastly, we note the cases relied upon by ODJFS are not on point. In one case, a decedent's son and power-of-attorney filed the appeal from the Medicaid denial: "Since the representative of [the decedent's] estate, and not [the son], in his individual capacity or as a lapsed attorney-in-fact, was the real party in interest to prosecute the action in the trial court, the trial court did not have jurisdiction to entertain the administrative appeal." *Santa v. Ohio Dept. of Human Servs.*, 136 Ohio App.3d 190, 195, 736 N.E.2d 86 (8th Dist.2000). The *Santa* case is distinguishable because "[t]he estate of [the decedent] Santa was not substituted as a party at any point in the proceedings before the administrative agency or the trial court." *Id.* at 193. There was thus no application of the statutory good cause extension to perfect the appeal.

{¶32} In the other cited case, a nursing home initiated appeals from the denial of Medicaid within the administrative system as the authorized representative of the decedent. *Saber Health Care v. Ohio Dept. of Job & Family Servs.*, 4th Dist. Adams No. 20CA1107, 2020-Ohio-4044, ¶ 3. The original notice of appeal to the common pleas court was filed on June 6, 2019 purportedly by the decedent; however, it was *voluntarily* dismissed. *Id.* at ¶ 3-4. In November 2019, a notice of appeal was filed by the nursing home and by a person who had a pending probate application to be appointed special administrator, citing (E)(3) of R.C. 5101.35. *Id.* at ¶ 4-5. The person was later appointed administrator on December 2, 2019. The common pleas court thereafter dismissed the appeal.

Case No. 21 MA 0109

**{¶33}** Notably, the decedent's administrator did not appeal to the appellate court; only the nursing home appealed. *Id.* at ¶ 33. The appellate court found the nursing home was not an appellant under R.C. 5101.35(A)(2) and its authorized representative status did not extend to an appeal in the common pleas court. *Id.* at ¶ 22-26. The court also observed that the person who filed the notice of appeal in the common pleas court was not designated as the administrator by the probate court until after he filed the notice of appeal, noting "Appellant cites no authority to support the proposition that would allow [this person's] appointment to relate back to the time of the filing of the notice of appeal." *Id.* at ¶ 33.

**{¶34}** There is no indication a motion to substitute a party was filed in *Saber* once the person who filed the notice of appeal was granted the letters of administration, and that person did not appeal to the appellate court. Moreover, although the appellate court failed to specifically reveal the date of the final administrative order, it appears by the time the person was finally appointed as the personal representative of the decedent, the six-month potential period for an extended appeal was expired (which is why the *Saber* court was discussing relation back to the November appeal filed by the would-be administrator). Accordingly, the cases cited by ODJFS are distinguishable.

**{¶35}** As we reject the ODJFS jurisdictional argument, we move on to address Appellant's assignment of error on appeal.

<u>ASSIGNMENT OF ERROR</u>

**{¶36}** Appellant's sole assignment of error contends:

"The Trial Court erred by not taking into account the exigencies of the Pandemic, when it was at its highest, in upholding the decision of [ODJFS] in not granting Medical benefits to [Appellant]."

**{¶37}** R.C. 119.12(M) requires a common pleas court to uphold an administrative decision on Medicaid if it is "supported by reliable, probative, and substantial evidence and is in accordance with the law." *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.*, 144 Ohio St.3d 70, 2015-Ohio-3397, 40 N.E.3d 1121, ¶ 17. Legal questions are reviewed de novo by the reviewing courts. *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14.

**{¶38}** On factual questions, the court of common pleas "is confronted with the issue of whether the decision is against the manifest weight of the evidence." *Arlen v.*

<u>Case No. 21 MA 0109</u>

*State of Ohio, State Med. Bd.*, 61 Ohio St.2d 168, 175, 399 N.E.2d 1251 (1980). The common pleas court does not conduct a trial de novo but views the credibility of witnesses and the weight of the evidence in the record while giving "due deference to the administrative resolution of evidentiary conflicts." *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265 (1980).

{¶39} "The appellate court's review is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." *Id.* The appellate court cannot substitute its judgment for that of the administrative agency or the common pleas court. *Id.*

{¶40} The estate does not dispute that verification was lacking as to a QIT or trust account and does not dispute there was, in fact, no trust established or account opened. "The properly executed QIT document, proof of the establishment of the QIT account, documentation of the required monthly deposit amount, and verification of monthly deposits from an income source or sources into the QIT account, including efforts to have income deposited directly into the QIT account, must be submitted along with the application for Medicaid for an individual needing LTC services." Ohio Adm.Code 5160:1-6-03.2(I). "The establishment of the QIT must be documented, including the location of the QIT account, the QIT account number, and details regarding who has access to the QIT account. The title of the QIT account must clearly identify it as a QIT account in the name of the individual." Ohio Adm.Code 5160:1-6-03.2(G).

{¶41} "The administrative agency shall deny the individual's application when the individual fails to provide the necessary information or verifications, or request assistance and cooperate with obtaining verifications, within the time specified in the second verification request." Ohio Adm.Code 5160:1-2-01(H)(5)(c). Without a QIT and account, the applicant was not eligible for Medicaid due to his gross monthly income, which was well above the SIL.

{¶42} Nevertheless, the estate argues the applicant, through his son, made every effort to comply with documentary requests but was thwarted by pandemic closures. The estate notes the trial court would have been aware of pandemic closures, as courts were

experiencing limited operation. The estate cites the son's affidavit as allegedly showing the impossibility of compliance with requests from MCDJFS.

{¶43} ODJFS says the estate fails to explain how a court can overlook the applicant's failure to establish a QIT or a trust account before his death, noting the agency would have sought reimbursement from the QIT after death for benefits paid if a QIT account existed. As the agency alternatively pointed out below, retroactivity can only be applied for a limited time and only for periods in the institution that the applicant was eligible by income. It is observed the estate's claim in the common pleas court was based on issues allegedly occurring in the days before the applicant's death. ODJFS points out the income-eligibility and QIT information was provided to the applicant and the son in March 2020, and there was no reference (even in the untimely affidavit) to attempting to establish a QIT earlier than July 2020.

{¶44} Regardless, as ODJFS emphasizes, the trial court rejected Appellant's pandemic impossibility argument by pointing to the prohibition on considering evidence outside of the record and to waiver principles. The common pleas court does not conduct a trial de novo and is limited by R.C. 119.12 as to the evidence it can consider. *University of Cincinnati*, 63 Ohio St.2d at 110 (giving due deference to the administrative resolution of evidentiary conflicts). This statute specifically states: "Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency." R.C. 119.12(K). The next sentence provides: "Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." *Id.*

{¶45} The estate presented no argument for application of the second sentence in division (K) of R.C. 119.12, and there is no indication its requirements were satisfied. That is, there was no newly discovered evidence or evidence that could not have reasonably been discovered prior to the hearing before the agency. Accordingly, the common pleas court properly struck the son's affidavit presented for the first time in the estate's merit brief in the common pleas court.

{¶46} With the affidavit stricken, ODJFS then points out the topic of impossibility due to pandemic closures was not raised in the son's letter to MCDJFS prior to the denial decision or to the state hearing officer at the hearing where testimony was taken. The

Case No. 21 MA 0109

agency urges the common pleas court was reasonable in finding waiver of the issue. The estate did not argue to the common pleas court and does not argue in the brief in this appeal that the issue was timely raised administratively. (In fact, the brief in this court does not directly challenge the application of waiver or the striking of the affidavit.)

**{¶47}** We note, in the administrative appeal of the state hearing decision, counsel claimed in the notice of appeal that the hearing examiner ignored the "effects of COVID" and referred to the son's attempts to establish a QIT and the applicant's "death two days later." The estate does not mention this or argue it was a preservation. ODJFS says this was a vague argument and did not articulate a claim that the pandemic made establishing a QIT impossible. Rather, the claim made it sound like the applicant died of COVID-19 two days after the son attempted to start the QIT process. Also, the establishment of the QIT was distinct from the opening of a trust account as made clear in the March 26, 2020 paperwork packet provided to the applicant and the authorized representative. This paperwork provided a link to a QIT template, a hotline number, and an advisement to consult an attorney (if the applicant and authorized representative could not handle the QIT establishment process themselves).

**{¶48}** In any event, the pandemic issue was not raised to MCDJFS. Instead, a different argument was raised about the QIT; the son disclosed the bank said the trust was a court matter and he then requested paperwork from the hotline. Moreover, there is no assertion or indication the issue was raised at the initial state hearing, where the son could have testified or presented the affidavit he first submitted on appeal to the common pleas court. Issues which were not raised at the administrative level are waived in the appeal to the court. *BRT Transport LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 14AP-800, 2015-Ohio-2048, ¶ 25; *Southgate I & II, Inc. v. Ohio Dept. of Health*, 7th Dist. Mahoning No. 97-CA-182 (Nov. 16, 1999). *See also 1609 Gilsey Invests., Inc. v. Liquor Control Comm.*, 10th Dist. Franklin No. 07AP-1069, 2008-Ohio-2795, ¶ 10 ("Errors which are not brought to the attention of the administrative agency by objection or otherwise are waived and may not be raised on appeal."), citing, e.g., *Stores Realty Co. v. City of Cleveland, Bd. of Bldg. Standards & Bldg. Appeals*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975) (failure to object to a matter in the administrative proceeding waives the matter on appeal to a court).

Case No. 21 MA 0109

**{¶49}** "The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play." *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 82, 679 N.E.2d 706 (1997) (wasting judicial and administrative resources by permitting a party to raise the failure to consider an issue on which the party remained silent). Accordingly, the common pleas court did not legally err or abuse its discretion in applying the waiver doctrine.

**{¶50}** Lastly, in the event the issues were to be reached, the estate points out the son's letter to MCDJFS denied the existence of a life insurance policy through New York Life. The estate then claims it is impossible to prove a negative, besides the son stating there was no policy in his letter. ODJFS responds by pointing out the applicant's bank statement showed a premium was paid to this company just before the Medicaid application was filed.

**{¶51}** "A life insurance policy is a countable resource to the policy owner for medical assistance purposes if it generates a CSV [cash surrender value]. * * * The individual must submit all policies that the individual and spouse own." Ohio Adm.Code 5160:1-3-05.12(C)-(D). The March 2020 checklist advised that the "Proof of current value of * * * life insurance" was a required outstanding verification and "If you are married, you must submit the same information for your spouse (even if separated)." A verification sent to MCDJFS showed the face value but not the cash or surrender value. The July 2020 checklist specifically advised the applicant that he was required to disclose the face value, the cash value, and ownership of the New York Life policy *and* expressly pointed to the Chase Bank statement showing the premium withdrawal.

**{¶52}** The son's letter merely stated no policy was in *the applicant's name*, without stating the cash value of the policy or acknowledging it was owned by the spouse. This is distinct from a situation where the agency generally asks for the value of any life insurance policies for the applicant and spouse and the applicant replies by stating none exist for either individual. ODJFS points out the policy's cash value was not provided to the agency at any point. A letter from the company that made the electronic bank withdrawal could have been obtained if there was in fact, no policy related to *either spouse* (just as the applicant obtained a letter from the other life insurance company to show cash value after the prior verification merely showed face value). At oral argument, counsel

Case No. 21 MA 0109

argued if the face value was known, then the county would have known the cash value was some amount less than the face value (apparently presuming the amount would not have affected the eligibility decision). We note Appellant's sole argument on appeal to the common pleas court about pandemic closures did not appear to encompass this additional missing verification cited in the administrative appeal decision.

{¶53} Regardless, with an unfavorable decision on the lack of a QIT or the required account, the issue of an additional lacking verification is irrelevant. There was no QIT or trust account established. In the absence of these trust-related items, the applicant never became eligible for Medicaid before he died because his income exceeded the eligibility limits. The estate's argument on appeal did not dispute these facts and law. In sum, the common pleas court did not abuse its discretion in concluding the administrative decision denying the application for Medicaid was supported by reliable, probative, and substantial evidence and was in accordance with the law.

{¶54} For the foregoing reasons, we affirm the decision of the common pleas court upholding the denial of Medicaid.

Waite, J., concurs.

D'Apolito, J., concurs.

Case No. 21 MA 0109

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**