[Cite as *Abrahamson v. Dept. of Commerce, Div. of Real Estate & Professional Licensing*, 2025-Ohio-4581.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

MICHAEL ABRAHAMSON,

Plaintiff-Appellant,

v.

OHIO DEPARTMENT OF COMMERCE, DIVISION OF REAL ESTATE &
PROFESSIONAL LICENSING,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0022**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CV 01203

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

Michael Abrahamson, Plaintiff-Appellant and

*Atty. Dave Yost,* Ohio Attorney General, and *Atty. Thomas J. Puckett*, Assistant
Attorney General, Ohio Attorney General's Office, for Defendant-Appellee.


Dated:  October 1, 2025

**DICKEY, J.**

{¶1}   Appellant, Michael Abrahamson, acting pro se, appeals the February 6, 2025 judgment entry of the Mahoning County Court of Common Pleas denying his administrative appeal of a final adjudication order ("Order") issued by Ohio Real Estate Appraiser's Board ("Board"). In the Order, the Board concluded Appellant had violated a statute governing his conduct as a state-licensed appraiser, and as a consequence, revoked his appraiser's license.

{¶2}   Appellant advances five assignments of error.  First, Appellant argues the trial court abused its discretion when it initially overruled his motion for an extension of the briefing schedule.  Second, Appellant contends no appeal brief was filed on his behalf because his trial counsel abandoned him.  Third, Appellant asserts the Board that issued the final adjudication orders was improperly comprised.  Fourth, Appellant alleges the Board failed to consider evidence of mitigation and improperly consolidated the two underlying actions.  Fifth, Appellant argues the trial court abused its discretion in denying his administrative appeal.

{¶3}   Finding no reversible error, we affirm the judgment entry of the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶4}   Two administrative cases were opened when Financial Asset Services, Inc. ("FAS"), a real estate appraisal management company, filed a complaint with Appellee, Ohio Department of Commerce, Division of Real Estate and Professional Licensing ("Appellee" or "Division") alleging Appellant submitted defective appraisal reports for two properties, one property in Cortland, Ohio and the other in Minerva, Ohio. The Cortland appraisal had an effective date of September 24, 2021 and a date of signature and report date of September 26, 2021.  The Minerva appraisal had an effective date of November 4, 2021 and a date of signature and report date of December 4, 2021.

{¶5}   According to the complaint, the defects were immediately apparent upon receipt of the appraisals.  Appellant never responded to FAS's multiple requests to correct the defects, which led FAS to file the complaint with Appellee. Appellee opened two separate investigations, one for each of the two allegedly defective appraisal reports.

**{¶6}** In Case No. 2021-1464 (the Cortland property), the initial acknowledgement of complaint was sent by registered mail from Appellee to Appellant on March 4, 2022. It was originally sent on December 14, 2021, but returned as unclaimed. In addition to notice of the complaint, the acknowledgment provided an opportunity for Appellant to request an informal meeting. Relevant to this appeal, the acknowledgment also contained a request for a true copy of the appraisal report, along with a written response to the allegations and a copy of the work file, to be submitted to Appellee within twenty days of receipt of the acknowledgement of complaint.

**{¶7}** When the requested documentation was not submitted, the investigator assigned to the complaint sent subsequent requests via electronic mail on December 19, 2022, February 16, 2023, and March 6, 2023. Appellant failed to respond to the multiple Division requests for records and information, despite contacting the investigator by telephone on February 16, 2023 and warranting that he intended to fulfill the request for documentation. A subpoena was sent by registered mail pursuant to R.C. 4764.04 on March 30, 2023, and demanded production of the requested documents within seven days of receipt. Appellant never responded to the subpoena. Appellant's receipt of the electronic mails and subpoena are uncontroverted.

**{¶8}** In Case No. 2022-140 (the Minerva property), the initial acknowledgement of complaint was sent by registered mail from Appellee to Appellant on February 18, 2022. When the requested documentation was not submitted, the investigator sent subsequent requests via electronic mail on February 18, 2022, December 19, 2022, February 14, 2023, and March 6, 2023. Appellant failed to respond to the multiple Division requests for records and information, despite contacting the investigator by telephone on February 16, 2023 and warranting that he intended to fulfill the request for documentation. A subpoena was sent by registered mail on March 30, 2023. Appellant never responded to the subpoena. Appellant's receipt of the electronic mails and subpoena are uncontroverted.

**{¶9}** As a result of Appellant's failure to cooperate with the investigations or respond to the subpoenas, Appellee issued Notices of Opportunity for Hearing in both matters on August 7, 2023. The Notices advised Appellant that the Superintendent of the

Division believed Appellant was in violation of R.C. 4763.11(G)(14) with regard to both properties, and that he had the right to request a hearing.

{¶10} R.C. 4763.11, captioned "Complaints against certificate holders, registrants, and licenses; investigations; disciplinary action," reads in relevant part:

> (G) The board shall take any disciplinary action authorized by this section against a certificate holder, registrant, or licensee or an applicant who obtains a certificate, registration, or license pursuant to this chapter who is found to have committed any of the following acts, omissions, or violations:
>
> . . .
>
> (14) Failing to provide copies of records to the superintendent or failing to maintain records as required by section 4763.14 of the Revised Code. Failure of a certificate holder, licensee, or registrant to comply with a subpoena issued under division (C)(1) of section 4763.03 of the Revised Code is prima-facie evidence of a violation of division (G)(14) of section 4763.11 of the Revised Code.

R.C. 4763.11(G)(14).

{¶11} Appellant requested hearings in both cases. Two separate hearings were conducted on December 29, 2023, albeit by the same hearing officer. Appellant attended the hearings and offered testimony with respect to each matter.

{¶12} Appellant conceded the errors in his appraisal reports and admitted he failed to respond to the requests for records and information and the subpoenas issued by Appellee. However, Appellant provided the following explanation for his failure to timely respond to the requests for information and the subpoena with respect to the 2021-1464 (Cortland) complaint:

> There were some simple mistakes made in the appraisal. A little bit prior to this I had lost my father to COVID. And in both of these – this particular one I did the appraisal on, she was worried about getting COVID

checks and I had to reschedule these in '21. I didn't respond within the 20 days. That's my fault. I thought I might go (inaudible). And I know it's late now.

During all this I had a basement flood and water damage to the file and things and computers in the basement (inaudible). That's my fault.

. . .

The basement flooded in [March of 2021]. And at that time I was – and I know this is not part of the appraising, but as far as my father was declining and I was his caregiver of his estate. He was going downhill. But during that time, I watched him in COVID. I'd keep things and everything in the house and in the basement someone unplugged the [sump] pump so the water just kept backing up.

(2021-1464 Hrg. at p. 28-29.)

{¶13} Appellant testified his father died in 2021, although the month was inaudible. The Cortland appraisal had an effective date of September 24, 2021, with a signature date of September 26, 2021.

{¶14} On September 24, 2022, Appellant "fell and hurt [his] left [sic] and hit [his] head." He explained he "went through a wall and hit a 2 by 4." Appellant required surgery and could not drive or walk for a period of six months. (*Id*. at p. 30.)

{¶15} Appellant testified he attempted to resolve the dispute with the management company. He speculated the management company had hired a new appraiser and was not interested in resolving the dispute.

{¶16} At the hearing in Case No. 2022-140 (Minerva), Appellant provided the following testimony:

The same circumstances as the other one (inaudible). COVID – (inaudible) my dad's house where I get my stuff done. My dad's house had a home inspection done. It was about $30,000 for about everything. I had to negotiate the contract for that.

I was – I brought a workfile [sic] with me. I didn't know if [Appellee] would take it or not, if it's too late or not, but I do have it. I really like appraising. I've been doing that since (inaudible). I'd like to advance to commercial. Hopefully some day (inaudible).

These were mistakes. The claim they have on, this property, the person had purchased it recently, I always ask the same questions. I mean, there's multiple lots and she told her it's just the house and not a lot. The client didn't provide me with a survey or any other documents. They had arcade games in the basement and other valuable things that they were moving in and they didn't really want me down there taking pictures of some of that stuff, because they redone [sic] a lot of the house. And then the estates and the appraisal that they – that were just part of the (inaudible). I don't know.

The smoke detectors, the same thing here, they are not required. One of the pictures was my (inaudible). The errors in her report, they didn't provide a survey. The MVBSD was special assessment and I put that underneath the assessment in the first case. It was suppressed in the appraisal.

The State has not responded. But just like anything else, like (inaudible) for a couple people down the road, if I do get a little better in good standing (inaudible). Okay. The staff had made mistakes and not responding (inaudible) because – [the management company] has the same thing, the website, when you even get on it now. I get tax stuff and things that shows blank. (inaudible.) I sent a correction on this, so. . . There's so many – they're so easy to get confused. There's an FAS and yeah, there's another one that's FAS and then there's some that (inaudible.) You get the word equity in that so you've got to be careful. The forms I thought were pretty solid. I submitted paperwork, file work. It's beyond me. (Inaudible.)

(2022-140 Hrg. at p. 19-21.)

{¶17}  The hearing officer issued separate reports on each matter, finding Appellee had established Appellant's violations of R.C. 4763.11(G)(14).  The Board conducted its review of the hearing officer's reports at a hearing conducted on May 16, 2024.

{¶18}  At the Board hearing, Appellant again admitted the violations of R.C. 4763.11(G)(14), but provided the following explanation for his failure to both fulfill the multiple requests for information and comply with the subpoena in both cases:

> I was my father's caretaker.  He had (inaudible), a kidney transplant. He had passed from COVID.  I was taking care of his stuff.  I got COVID and that had an impact on me for awhile.  September of 2022, I fell off from a set of steps and I severed my (inaudible) off my kneecap.  My head went through a wall and I had to have surgery.  It had caused me some issues because I couldn't walk, you know, memory and things like that.  I have a copy of a medical report with me that has the dated, you know, that would prove (inaudible).  That had an impact on stuff and the not responding when I should have a little bit sooner.  I had a lot of stuff going on that I just – you know, I understand you have a timely

(5/16/24 Board Hrg. at p. 6-7.)

{¶19}  R.C. 4763.11(G)(14) requires the Board to impose any discipline authorized by the Code against a licensee who fails to provide copies of records to the superintendent or fails to maintain records as required by R.C. 4763.14.  Failure by a licensee to comply with a subpoena issued under division (C)(1) of section 4763.03 is prima-facie evidence of a violation of division (G)(14).

{¶20}  The Board has within its discretion the authority to impose the "disciplinary action the [B]oard considers appropriate," including but not limited to:

(1) Reprimand of the certificate holder, registrant, or licensee;

(2) Imposition of a fine, not exceeding, two thousand five hundred dollars per violation;

(3) Requirement of the completion of additional education courses. Any course work imposed pursuant to this section shall not count toward continuing education requirements or prelicense or precertification requirements set forth in section 4763.05 of the Revised Code.

(4) Suspension of the certificate, registration, or license for a specific period of time;

(5) Revocation or surrender of the certificate, registration, or license.

R.C. 4736.11(F)(1-5).

**{¶21}** The Board voted to adopt the hearing officer's reports and issued the same adjudication order in each case revoking Appellant's appraiser license. Of the three members present at the hearing (a fourth member was absent), two voted in favor of the revocation of Appellant's license as the penalty for Appellant's violations. The two members reasoned the Board's ability to fulfill its statutory duties is completely thwarted when an appraiser fails to comply with a subpoena. (5/16/24 Board Hrg., p. 12-13.) The third member voted against revocation, and in favor of suspension of Appellant's appraiser's license.

**{¶22}** On June 4, 2024, Appellant filed a pro se appeal with the common pleas court. On July 5, 2024, Appellant filed a motion to suspend the Order, which the trial court overruled on September 9, 2024.

**{¶23}** On August 29, 2024, the trial court issued a briefing schedule containing the following deadlines:

| | |
|---|---|
| October 10, 2024 | All pretrial motions, dispositive or otherwise |
| November 20, 2024 | Appellant's brief |
| December 20, 2024 | Appellee's brief |
| January 8, 2025 | Appellant's reply brief |

A non-oral hearing was scheduled for January 15, 2025.

Case No. 25 MA 0022

{¶24} On October 4, 2024, six days before the expiration of the motion deadline, Appellant filed a motion to continue the briefing schedule for thirty days. The motion reads in relevant part, "Appellant is retaining counsel who will need additional time. This Motion is not made for the purposes of delay." The trial court overruled Appellant's request for an extension of the deadlines, but noted it would reconsider the request if counsel entered an appearance on behalf of Appellant.

{¶25} A notice of appearance of counsel was filed on November 20, 2024, the deadline for Appellant's appeal brief. Appellant's counsel sought a fourteen-day extension of the briefing schedule, which was granted. However, Appellant failed to file an appeal brief in compliance with the court's amended briefing schedule.

{¶26} Appellee timely filed its appeal brief on January 3, 2025. Although Appellee acknowledged Appellant had filed no appeal brief, Appellee addressed the merits of the appeal, essentially arguing Appellant's series of personal crises did not excuse his failure to respond to the multiple requests for information and the subpoena in each case.

{¶27} On February 6, 2025, the trial court issued the judgment entry on appeal, captioned "ENTRY GRANTING APPELLEE'S MOTION TO DISMISS," which reads in its entirety:

> This matter came before the Court after the Briefing Scheduled has [sic] been completed, which was ordered by this Court on August 29 and later amended on November 21, 2024. After review, for good cause, this Court hereby DENIES Appellant's administrative appeal.

### STANDARD OF REVIEW

{¶28} The right to appeal from an administrative decision is conferred by statute. *Harrison v. Ohio State Med. Bd.,* 103 Ohio App.3d 317, 321 (10th Dist.1995). In general, every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located, as provided in Chapter 2505 of the Revised Code. R.C. 2506.01(A). To be appealable under R.C. 2506.01, the administrative decision must be

rendered in a quasi-judicial proceeding, which includes requirements of notice, a hearing, and an opportunity to introduce evidence. *Lakota Local Sch. Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637 (6th Dist.1996). Where a statute confers a right to appeal, strict adherence to the statutory conditions is essential. *Holmes v. Union Gospel Press*, 64 Ohio St.2d 187, 188 (1980).

{¶29} We summarized the standards of review applicable to an administrative decision in *Herubin v. Ohio Dept. of Job & Family Services*, 2022-Ohio-3243 (7th Dist.):

> R.C. 119.12(M) requires a common pleas court to uphold an administrative decision [ ] if it is "supported by reliable, probative, and substantial evidence and is in accordance with the law." *Estate of Atkinson v. Ohio Dept. of Job & Family Servs.*, 144 Ohio St.3d 70, 2015-Ohio-3397, 40 N.E.3d 1121, ¶ 17. Legal questions are reviewed de novo by the reviewing courts. *Spitznagel v. State Bd. of Edn.*, 126 Ohio St.3d 174, 2010-Ohio-2715, 931 N.E.2d 1061, ¶ 14.

> On factual questions, the court of common pleas "is confronted with the issue of whether the decision is against the manifest weight of the evidence." *Arlen v. State of Ohio, State Med. Bd.*, 61 Ohio St.2d 168, 175, 399 N.E.2d 1251 (1980). The common pleas court does not conduct a trial de novo but views the credibility of witnesses and the weight of the evidence in the record while giving "due deference to the administrative resolution of evidentiary conflicts." *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265 (1980).

> "The appellate court's review is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." *Id.* The appellate court cannot substitute

its judgment for that of the administrative agency or the common pleas court. *Id.*

*Herubin*, 2022-Ohio-3243, ¶ 37-39.

**{¶30}** An abuse of discretion occurs when a court exercises its judgment "in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING THE PRO SE APPELLANT'S REASONABLE AND TIMELY REQUEST FOR AN EXTENSION OF THE BRIEFING CALENDAR, SPECIFICALLY BY CONDITIONING RECONSIDERATION OF THE EXTENSION SOLELY ON THE APPELLANT OBTAINING LEGAL COUNSEL.**

**{¶31}** In his first assignment of error, Appellant contends the trial court's initial denial of his pro se request to amend the briefing schedule constituted reversible error. He argues the trial court acted discriminatorily when it predicated the requested extension on the retention of counsel.

**{¶32}** "The trial court has broad supervisory control over its own docket." *JPMorgan Chase Bank, N.A. v. Gallabrese*, 2025-Ohio-733, ¶ 52 (7th Dist.), citing *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537-538 (1942). "It is within the trial court's sound discretion to grant an extension of filing deadlines, and said decision will not be

Case No. 25 MA 0022

disturbed on appeal unless an abuse of discretion is demonstrated." *Gallabrese* at ¶ 52, citing *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 271 (1988).

**{¶33}** Appellant requested an extension of the briefing schedule on October 4, 2024, six days prior to the dispositive motion deadline of October 10, 2024. In the motion, Appellant represented that he was "retaining counsel who will need additional time" and Appellant warranted the motion was not for the purpose of delay.

**{¶34}** The trial court overruled the motion, but allowed for reconsideration if Appellant retained counsel. The trial court ultimately granted the motion for extension of the briefing schedule following the notice of appearance of counsel on behalf of Appellant and the subsequent motion for extension of time.

**{¶35}** Appellant contends he suffered prejudice as a pro se litigant because the trial court predicated the extension of time on Appellant's retention of counsel. To the contrary, it was Appellant who predicated his motion for an extension of the briefing schedule on the retention of counsel. Appellant warranted that he was "retaining counsel who will need additional time." As a consequence, Appellant cannot show he was prejudiced by his pro se status.

**{¶36}** Appellant argues in the alternative that he was forced to hurriedly find counsel due to the trial court's order. However, Appellant implied in his motion that he was already in the process of retaining counsel when he filed the original motion for extension of time.

**{¶37}** We find the trial court acted within its discretion when it initially denied Appellant's motion for extension of the briefing schedule pending Appellant's retention of counsel. Accordingly, we further find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO 2

**THE MAHONING COUNTY COURT OF COMMON PLEAS ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED APPELLEE'S MOTION TO DISMISS AND DISMISSED APPELLANT'S ADMINISTRATIVE APPEAL FOR FAILURE TO PROSECUTE, DENYING APPELLANT A MEANINGFUL OPPORTUNITY TO BE HEARD, WHERE THE FAILURE TO TIMELY FILE THE BRIEF WAS SOLELY AND EXCLUSIVELY**

**CAUSED BY THE DOCUMENTED ABANDONMENT BY APPELLANT'S RETAINED COUNSEL OF RECORD.**

{¶38} In his second assignment of error, Appellant contends his trial counsel's failure to file an appellate brief should not be imputed to Appellant, because Appellant was abandoned by his trial counsel. Appellee argues the second assignment of error is essentially a claim for ineffective assistance of counsel, which is not recognized in administrative appeals.

{¶39} The law governing the imputation of attorney neglect to the client has been developed under the rubric of Civil Rule 60(B). Appellant did not file a 60(B) motion, therefore the documentation establishing his efforts to communicate with counsel during the relevant time period, including his affidavit – all of which is attached to his appellate brief – is outside of the record.

{¶40} In *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), the Ohio Supreme Court held the failure to timely answer a complaint is inexcusable neglect pursuant to Civil Rule 60(B) and should be imputed to the client. The *GTE* Court described attorney neglect as conduct that "falls substantially below what is reasonable under the circumstances." *Id.* at 152.

{¶41} In adopting the federal rule imputing inexcusable attorney neglect to the client, the Ohio Supreme Court quoted the following rationale articulated by the United States Supreme Court in *Link v. Wabash R. R. Co.*, 370 U.S. 626 (1962):

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer[-]agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955.

*Id.* at 633-634.

**{¶42}** While Appellant concedes attorney neglect is imputed to the client in Ohio, he argues a judgment entry dismissing a civil action may be reversed where a party can demonstrate complete abandonment by his trial counsel. Appellant relies on documentation outside the record to establish his attempts to communicate with counsel in order to demonstrate complete abandonment.

**{¶43}** Contrary to Appellant's interpretation of *GTE*, the Ohio Supreme Court recognized no such exception to the imputation rule based on complete abandonment. The *GTE* Court merely observed that the neglect of counsel, coupled with other sections of Civil Rule 60(B), for instance, fraud of the adverse party, may entitle the movant to relief under the applicable subsection.

**{¶44}** It was the Second District in *Whitt v. Bennett*, 82 Ohio App.3d 792 (2d Dist. 1992), that opined Civil Rule 60(B)(5) is implicated where counsel abandons his representation of a client. The Second District reasoned, "fault should not automatically be imputed when an attorney has grossly neglected a diligent client's case and misleads the client to believe that his interests are being properly handled." *Id.* at 797-798. As a consequence, the *Whitt* panel remanded the matter to the trial court to determine whether the attorney's failure to attend a hearing on a motion to dismiss for failure to comply with a discovery order was potentially a matter of an extraordinary nature, and that relief from judgment may be appropriate pursuant to Civ.R. 60(B)(5).

**{¶45}** Similarly, in *Mayor v. WCI Steel, Inc.*, 2001 WL 276976 (11th Dist. March 16, 2001), the Eleventh District opined Civ.R. 60(B)(5) is applicable where an attorney has abandoned his client. In that case, the trial court granted a motion to dismiss after the plaintiff's counsel failed to comply with an order on a motion to compel. The Eleventh District observed, "[a]bandonment would occur if the attorney were prohibited from practicing law by a disciplinary committee, or if the attorney refused to respond to communications from his client and failed to perform any work on behalf of his client, in which case the client would be without scienter." *Id.* at *3.

**{¶46}** Nonetheless, the Eleventh District cautioned that Civil Rule 60(B)(5) applies solely to extraordinary circumstances. The *Mayor* panel wrote:

Treating attorney incompetence or inexcusable neglect, that fails to rise to the level of abandonment, as a reason justifying relief from judgment under Civ.R. 60(B)(5) would potentially open a Pandora's box with respect to motions for relief from judgment. This court is reluctant to place itself in the position of potentially rewarding civil litigants with relief from judgment because their attorneys refused to obey court orders or failed to appear at hearings. The appropriate remedy for such incompetence is a malpractice claim.

*Id.*, *see also Elton v. Cleveland Steel Container Corp.*, 2023-Ohio-2253 (11th Dist.) (affirming order dismissing Elton's case as a sanction for his trial counsel's repeated failure to appear at hearings and failure to respond to discovery for over a year, despite order compelling his response).

**{¶47}** However, in *Liberty Nursing Ctr. of Englewood, Inc. v. Valentine*, 2012-Ohio-1096, (2d Dist.), the Second District concluded an attorney abandoned his clients where he blatantly misled them about the status of their case, and the clients' electronic mails established they were without scienter. There was no evidence in that case that the attorney performed any work on behalf of the clients after he filed their answer and participated in a scheduling conference. The Notice of Substitution of Counsel established the original attorney's "cessation of any communication whatsoever." Substitute counsel's letter to the original attorney refers to his "silence and continued inaction."

**{¶48}** Turning to this appeal, Appellant did not file a Civil Rule 60(B) motion. As a consequence, the evidence on which he relies to establish abandonment is not in the record. Moreover, Civil Rule 60(B) contains additional safeguards regarding the reinstatement of a dismissed action, including evidence of a meritorious defense, which are not present here. Finally, an administrative appeal is wholly distinguishable from a civil case because the entire administrative record is before the trial court. Here, the trial court indicated that it reviewed the record and denied the appeal on the merits. In the absence of evidence demonstrating abandonment in the record and the fact that the trial court considered the entire record and entered judgment on the merits of this administrative appeal, we find Appellant was not abandoned by his trial counsel.

**{¶49}** Further, '[t]here is no constitutional or statutory right to the effective assistance of counsel in a civil case." *Marshall v. Scalf*, 2007-Ohio-3667, ¶ 26 (8th Dist.), citing *Friedman v. Arizona*, 912 F.2d 328, 333 (9th Cir. 1990) and *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir. 1988). "The Sixth Amendment of the United States Constitution guarantees a defendant effective counsel in criminal prosecutions. There is no such guarantee in civil actions." *DeSarro v. Larkins*, 2017-Ohio-726, ¶ 24 (7th Dist.), citing *Novello v. Novello*, 2011-Ohio-2973, 1123 (7th Dist.). More specifically, the doctrine has never been extended to administrative appeals taken under R.C. 119.12. *See Pandey v. City of Piqua Bd. of Zoning Appeals*, 2023-Ohio-1302, ¶ 16 (2d Dist.); *see also Bharmota v. State Med. Bd.*, 1993 WL 512506, at *6 (10th Dist. Dec. 7, 1993). Accordingly, " '[a] complaint of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration in its application when the attorney was employed by a civil litigant.' " *Wolford v. Wolford*, 184 Ohio App.3d 363, 1059 (4th Dist. 2009), quoting *Phillis v. Phillis*, 164 Ohio App.3d 364, 1153 (5th Dist. 2005).

**{¶50}** Finally, Appellant argues Ohio jurisprudence strongly favors resolving cases on the merits and exercises caution when dismissing cases on procedural grounds. However, as previously stated, the dismissal in this case was on the merits.

**{¶51}** For the foregoing reasons, we find Appellant has failed to show he was abandoned by his trial counsel. Further, to the extent the second assignment of error constitutes an ineffective assistance of counsel claim, claims of ineffective assistance are not recognized in administrative appeals. Accordingly, we find Appellant's second assignment of error has no merit.

<u>**ASSIGNMENT OF ERROR NO. 3**</u>

**THE ADJUDICATION ORDER ISSUED BY THE OHIO REAL ESTATE BOARD IS CONTRARY TO LAW AND THEREFORE INVALID BECAUSE THE BOARD WAS IMPROPERLY CONSTITUTED, FAILING TO MEET MULTIPLE MANDATORY COMPOSITIONAL REQUIREMENTS OF OHIO REVISED CODE SECTION 4763.02(A), INCLUDING THE MINIMUM NUMBER OF MEMBERS HOLDING A STATE-CERTIFIED *GENERAL***

REAL ESTATE APPRAISER CERTIFICATE AND THE REQUIRED REPRESENTATION FROM AN APPRAISAL MANAGEMENT COMPANY, AT THE TIME THE ADJUDICATION ORDER WAS RENDERED.

**{¶52}** Appellant argues the Board, as comprised when his appraiser's license was revoked, lacked the statutorily-mandated minimum of two members holding state certified general real estate appraiser certificates. Appellant argues this alleged failure "means the Board operated without the specific level of appraisal expertise the legislature deemed essential for its adjudicative functions." (Appellant's Brf., p. 16.)

**{¶53}** Next, Appellant argues the Board lacked the statutorily-mandated representative from an Appraisal Management Company, due to a vacancy lasting approximately two years. Appellant argues this absence "meant the Board operated without the specific industry perspective mandated to be included in its deliberations." (*Id.* at p.17.)

**{¶54}** Appellee concedes to the vacancy, but argues the Board represented a quorum, whether there were four or five members. However, Appellee advanced no argument regarding the credentials of the respective members.

**{¶55}** Appellant does not cite the record for any evidence to establish the alleged deficient certification of the members. The administrative record in this matter is voluminous, totaling 639 pages. "Although we make some allowances for pro se litigants, it cannot change the fundamental requirement that Appellant, as the party asserting that there was an error in the trial court, bears the burden in the court of appeals to demonstrate error by reference to matters made a part of the record." *Neill v. Admr., Bur. of Workers' Comp.*, 2001-Ohio-3400 (7th Dist.), citing *Knapp v. Edward Laboratories*, 61 Ohio St.2d 197, 199 (1980).

**{¶56}** Further, Appellant has failed to demonstrate the Board's determination in this case required appraisal expertise or specific industry perspective. The alleged errors in the two appraisals were not at issue, but instead, Appellant's failure to comply with multiple requests for information and subpoenas issued in each case.

**{¶57}** We find Appellant has failed to demonstrate by reference to the record the Board members' alleged lack of credentials in the record, and similarly failed to

Case No. 25 MA 0022

demonstrate he suffered any prejudice as a result of the composition of the Board that revoked his appraiser's license. Accordingly, we find Appellant's third assignment of error has no merit.

### ASSIGNMENT OF ERROR NO. 4

**THE OHIO REAL ESTATE APPRAISER BOARD'S ADJUDICATION ORDER REVOKING APPELLANT'S APPRAISER CERTIFICATE IS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE AND IS NOT OTHERWISE IN ACCORDANCE WITH LAW, DUE IN PART TO PROCEDURAL IRREGULARITIES INCLUDING IMPROPER COMBINATION OF DISTINCT COMPLAINTS (RESULTING IN DUPLICITY), AND BECAUSE THE BOARD FAILED TO GIVE APPROPRIATE WEIGHT AND CONSIDERATION TO APPELLANT'S SIGNIFICANT AND DOCUMENTED EXTENUATING CIRCUMSTANCES WHICH DIRECTLY IMPACTED HIS ABILITY TO COMPLY.**

### ASSIGNMENT OF ERROR NO. 5

**THE OHIO REAL ESTATE BOARD ABUSED ITS DISCRETION BY IMPOSING THE PENALTY OF PERMANENT REVOCATION, AS SUCH PENALTY IS DISPROPORTIONATELY SEVERE AND UNREASONABLE GIVEN THE NATURE OF THE VIOLATIONS ALLEGED AND THE SIGNIFICANT MITIGATING CIRCUMSTANCES PRESENTED BY APPELLANT.**

{¶58} Appellant's fourth and fifth assignments of error are addressed together as they challenge the weight of the evidence supporting the trial court's denial of the administrative appeal. First, it is important to note Appellant argues the trial court erred when it granted Appellee's "motion to dismiss." However, Appellee did not file a motion to dismiss, it filed a merits brief. Appellee acknowledged in its merits brief that Appellant had failed to file an appeal brief on or before the deadline. Nonetheless, Appellee sought dismissal on the merits.

Case No. 25 MA 0022

**{¶59}** Inexplicably, the trial court captioned the judgment entry on appeal "ENTRY GRANTING APPELLEE'S MOTION TO DISMISS." Even more confounding is the fact that the judgment entry was prepared and approved by Appellee. Consequently, Appellant's belief that the matter was dismissed on procedural grounds is understandable.

**{¶60}** The trial court's decision reads, in relevant part, "After review, for good cause, this Court hereby DENIES Appellant's administrative appeal." The undisputed evidence in the record demonstrates Appellant twice violated R.C. 4763.11(G)(14). Appellant conceded to the violations. Consequently, we find the trial court did not abuse its discretion in concluding the administrative decision is "supported by reliable, probative, and substantial evidence and is in accordance with the law." *See* R.C. 119.12(M).

**{¶61}** Appellant contends the Board did not give sufficient weight to the mitigating circumstances surrounding Appellant's violations. Appellant's defense was predicated upon a series of unfortunate life events, which occurred prior to and during the more than one-year period that elapsed between the receipt of the acknowledgment of the complaints in early 2022 to the issuance of the subpoenas in March of 2023.

**{¶62}** Despite Appellant's awareness of the defects in the appraisals in late 2021, based on electronic mails sent to Appellant by FAS, he failed to correct the appraisals. Moreover, with his license in jeopardy, Appellant failed to engage in any substantive communication with Appellee, but for one telephone call in the roughly one-year period the complaints were pending with Appellee.

**{¶63}** R.C. 4763.11 vests the Board with the discretion to determine whether a violation has occurred and the appropriate penalty. Appellant's lengthy description of his difficulties in 2021 and 2022 did not establish that he was completely foreclosed from fulfilling his statutory duties as a licensed appraiser.

**{¶64}** Finally, Appellant contends he was prejudiced by the consolidation of the separate matters. To the contrary, the matters were treated separately until Board review. Appellant advanced the same excuses for both violations. There is no evidence in the record to suggest that Appellant's dereliction of his statutory duties as a state licensed appraiser in separate cases would have resulted in a lesser sanction.

**{¶65}** Accordingly, we find the court did not abuse its discretion in denying Appellant's administrative appeal. We further find Appellant's fourth and fifth assignments of error have no merit.

## CONCLUSION

**{¶66}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The February 6, 2025 judgment entry of the trial court denying Appellant's administrative appeal is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**